[Nos. 20617–6–I; 22070–5–I; 22071–3–I. Division One. July 24, 1989.]

*In the Matter of the Guardianship of*
PAULA LASKY.

JACK STEINBERG, *Appellant,* v. PETER RETTMAN, *as Trustee, and* THE HILDA RETTMAN TRUST,
*Respondents.*

*Jack Steinberg* and *Steinberg & Steinberg,* for appellant.

*Gail Mautner* and *Lane Powell Moss & Miller,* for respondents.

SWANSON, J.—The appellant, Jack Steinberg, appeals the trial court's orders removing him as guardian, dismissing the action brought by him against the trust and its trustee, finding him in violation of CR 11, and imposing CR 11 sanctions against him. We affirm in part and reverse in part.

This case involves a living trust created by Hilda Rettman on August 15, 1982. When the trust was created, Hilda Rettman transferred into it all of the property she owned. Hilda Rettman had two children. Her son, Peter Rettman, was named trustee in the document creating the living trust. Her daughter, Paula Rettman Lasky, was named as a beneficiary of the trust. Basically, the trust document divided the trust estate equally between Peter and Paula upon the death of their mother, Hilda. Upon Hilda Rettman's death, Peter's half of the estate was to be distributed to him while Paula's half was to remain in trust. The attorney who had written the documents creating the trust testified in his deposition that Hilda Rettman had specifically wanted Peter to be the trustee. She wanted Peter to control Paula's portion of the estate and determine "when, where and how Paula would get any money" because Paula is mildly retarded and lacks the judgment necessary to control money. The deposition made it clear that Hilda Rettman understood the provisions of the trust and that they were specifically what she desired.

Hilda Rettman died in September 1982. Shortly before this, Paula had married Jerry Lasky. At the time of Hilda Rettman's death, Paula's portion of the trust was worth approximately $75,000 to $85,000. In January 1985, Peter and his wife filed a petition to become Paula's guardians.

Submitted with this petition was a psychologist's report indicating that Paula was not capable of managing her own funds. On March 13, 1985, an order was entered appointing Peter and his wife as Paula's guardians.

Apparently, on June 28, 1985, Paula approached attorney Jack Steinberg complaining of poor treatment by Peter. Subsequently, on August 5, 1985, Steinberg filed a petition for emergency allowance, monthly allowance, attorneys fees, and for removal of trustee and guardian and appointment of new trustee and guardian. By order entered September 6, 1985, Steinberg was appointed as counsel for Paula "for the limited purpose of obtaining an accounting from the Hilda Rettman Trust and determining whether or not any action should be commenced against the Trust" on Paula's behalf. The order also provided that "[n]o subsequent legal action shall be commenced by Jack Steinberg . . . without a full presentation to this court and a further Court Order approving such action."

On January 10, 1986, Steinberg filed the following motions for Paula: (1) Motion to remove Peter and his wife as guardians; (2) Motion to appoint Steinberg as Paula's guardian and attorney; (3) Motion for payment of Steinberg's legal fees out of Paula's trust account. On January 23, 1986, findings of fact, conclusions of law and judgment were entered by the Court Commissioner, removing Peter and his wife as guardians and appointing Steinberg as Paula's guardian and attorney for the guardianship. The Commissioner also made the following statement regarding Steinberg's authority to bring actions on Paula's behalf regarding the trust:

> Jack Steinberg, as Guardian of the person and estate of Paula Rettman Lasky, is authorized to bring actions on her behalf in connection with the Hilda Rettman Trust, but he should be required to advise the Court prior to doing so of the nature of the action to be brought and the likelihood of success in such an action. Mr. Steinberg will have to advance all costs and fees in the pursuit of such actions.

On May 6, 1986, without complying with the above order, Steinberg filed a summons and complaint seeking, among other things, to remove Peter as trustee of the trust due to alleged misconduct and to challenge the validity of the trust. Peter responded with a motion to dismiss the claims of misconduct against him as trustee, which was denied on October 24, 1986. However, the trust was found to be "a valid legal entity and the claims of fraud, duress or undue influence in its formation" were dismissed. The order also stated that the action against Peter as the trustee was stayed until Steinberg complied with the previous order requiring him to advise the court of the nature of the action and the likelihood of success.

On October 31, 1986, Steinberg filed a motion and affidavit to approve bringing the action against Peter as trustee. On December 31, 1986, the Court Commissioner appointed a guardian ad litem to conduct a report addressing the following matters:

a. Whether the Court should retain jurisdiction over this guardianship, given that the ward, Paula Rettman Lasky, appears to be a domiciliary of Toronto, Canada with no apparent interest in returning to Seattle.

b. Whether the guardian ad litem should evaluate Paula Rettman Lasky's current well–being, and if so, address that topic.

c. Whether the guardian ad litem should evaluate the needs of Paula Rettman Lasky, both financially and with regard to any guidance she might require in daily matters, and if so, address that topic.

d. The guardian ad litem's evaluation of whether litigation against the Trustee is in Paula Rettman Lasky's best interests and whether the relief sought justifies the expenditure of resources.

e. The guardian ad litem's evaluation of whether Mr. Steinberg should continue as guardian for Paula Rettman Lasky.

Also in this order, the Court Commissioner made the following statement regarding Steinberg's authority to bring an action against Peter as trustee:

> The Court has not received a report from the Guardian, Mr. Jack Steinberg, regarding the nature of the claims he desires to bring against the Trustee of the Hilda Rettman Trust, the basis of those claims or whether the end result sought by the Guardian is likely to be of any benefit to the ward, Paula Rettman Lasky. Therefore, the Guardian is directed to file an adequate justification for his proposed suit against the Trustee no later than January 23, 1987. *He may take no further action with regard to the Trust or the Trustee until the Court gives him permission to proceed.*

(Italics ours). The court then stated that it would render its decision regarding Steinberg's motion "[f]ollowing *review* of the report of the guardian ad litem and of the Guardian's request for permission to proceed against the Trustee." (Italics ours.)

On January 23, 1987, pursuant to the above order, Steinberg filed an affidavit detailing the reasons why he was seeking discharge of Peter as trustee. On March 11, 1987, the guardian ad litem noted the matter for a "½ day hearing" (not a trial). The guardian ad litem filed his report on March 13, 1987. On May 11, 1987, Steinberg filed a lengthy memorandum in response to the report of the guardian ad litem.

On May 19, 1987, all parties appeared before Judge Aitken in King County Superior Court. The Judge indicated that she would like to read the files before taking any testimony. The guardian ad litem then informed the court that this was "a hearing on the record, not a full blown trial" and that the court should only take testimony if it felt it was needed after reading the record. The trust's attorney also indicated to the court that this was a hearing, that testimony was not necessary, and that this matter "would have been handled out of ex parte except that it was anticipated that it would take longer than their ten minute to half hour limit." Immediately following this, Steinberg "suggested" to Judge Aitken that the matter would take 2, 3, or 4 days. At this time, Steinberg did not otherwise object to the statements made by the guardian ad litem or

Peter's attorney as to the matter being in the nature of a hearing without testimony being necessary.

The following day, May 20, 1987, after reviewing the material, the court ruled that

I do not believe that any testimony need be taken in this matter, but I will hear any oral presentation that any party wishes to make if any party wishes to make one.

Steinberg responded that he was "dismayed" by this determination. The court then informed Steinberg that he should have anticipated that this would be a motion in ex parte but that she would consider taking "testimony of ten minutes or so." The court also indicated to Steinberg that affidavits could have been filed. Each party then proceeded with oral argument, the court ruled verbally, and set the presentation of findings and conclusions for hearing on June 9, 1987. The time allotted for presentation on June 9 was apparently insufficient for all of Steinberg's objections to be heard and was continued to June 12, 1987. On June 12, 1987, the court entered findings of fact and conclusions of law on report of guardian ad litem and order on report of guardian ad litem. The court ordered, among other things, that Peter should continue as trustee, that Steinberg should be removed as guardian, that action against Peter and the trust be dismissed, and that continued litigation against the trustee was not in Paula's best interest. Steinberg was also attempting to recover attorney fees he had incurred in bringing the action against the trustee, but the court set this over for hearing at a later date. On June 29, 1987, Steinberg filed a notice of appeal regarding the findings, conclusions, and order.

Also on June 29, 1987, the trust moved for imposition of CR 11 sanctions against Steinberg, alleging numerous CR 11 violations. On July 17, 1987, Steinberg filed his own motion for CR 11 sanctions against Peter and his attorneys for their conduct in bringing a motion for CR 11 sanctions against him. A hearing on these motions was conducted before Judge Aitken on January 8, 1988. On February 24, 1988, the court entered its order for sanctions and denying

attorneys fees. In this order, the court found that CR 11 sanctions should be imposed against Steinberg because several allegations made by him in his pleadings had not been reasonably investigated prior to being made and because he did not inform the court of the likelihood of success of the lawsuit against the trust as required by court orders. The sanction imposed was to deny Steinberg his requested and previously awarded attorney fees of approximately $8,500. Steinberg filed an amended civil appeal statement with the Court of Appeals on February 25, 1988, to include this order in his appeal.

## STANDING TO APPEAL

The first issue presented is whether Steinberg has standing to appeal any aspect of this case. The trust contends that Steinberg lacks standing because he has been removed and replaced as Paula's guardian by valid court order entered June 12, 1987, has no authority to act on her behalf in bringing this appeal, and is not an "aggrieved party" as required by RAP 3.1.

RAP 3.1 provides that "[o]nly an aggrieved party may seek review by the appellate court." An aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected. *Cooper v. Tacoma*, 47 Wn. App. 315, 316, 734 P.2d 541 (1987). Here, Steinberg was denied attorneys fees and had CR 11 sanctions imposed against him by order filed February 24, 1988. This order substantially affected a pecuniary right to fees. Therefore, Steinberg is an "aggrieved party" who may appeal that order.

However, Steinberg also appeals the June 12, 1987, order removing him as guardian and dismissing the trust action. Both parties rely primarily upon *State ex rel. Simeon v. Superior Court*, 20 Wn.2d 88, 145 P.2d 1017 (1944) to support their contentions regarding Steinberg's standing to appeal the June 12, 1987, order. In *Simeon*, the court considered the question of whether one who has been

removed as an administrator of an estate by court order can have the order reviewed by an appeal. The court held that there was no right to such an appeal. In reaching this conclusion, the court stated,

> The general rule, . . . is that no one can appeal to an appellate court unless he has substantial interest in the subject matter of that which is before the court and is aggrieved or prejudiced by the judgment or order of the court. Some personal right or pecuniary interest must be affected. The mere fact that one may be hurt in his feelings, or be disappointed over a certain result, or feels that he has been imposed upon, or may feel that ulterior motives have prompted those who instituted proceedings that may have brought about the order of the court of which he complains, does not entitle him to appeal. He must be "aggrieved" in a legal sense.

(Citations omitted.) *Simeon,* 20 Wn.2d at 90. The *Simeon* court also cited to *Cairns v. Donahey,* 59 Wash. 130, 109 P. 334 (1910), in which the former administrator of an estate appealed the order revoking the administration. In dismissing that appeal, the court stated:

> " 'Besides having an interest in the subject–matter of the suit, it is necessary, in order to maintain an appeal, that the person taking it be injuriously affected by the judgment, order, or decree appealed from, so that one cannot appeal from a decision, however erroneous, which does not affect his substantial rights.' 4 Enc. L. & P. 81.
>
> "We fail to understand how the administrator has any interest in the subject–matter of this appeal, or how he is injuriously affected by the final order entered. He has no interest in the estate other than for compensation that may be due him. The heirs at law appeared in person, one to obtain an order probating the will and the other resisting the same, and as we have stated, neither of them has appealed, although they are the only parties in interest. No final order has been entered in the matter of compensation due Cairns as administrator, for the services of himself or his attorney. Had such an order been made and had he been aggrieved thereby, he would have such an interest

as would entitle him to an appeal. But no such question is presented by the record before us."

*Simeon,* 20 Wn.2d at 90 (citing *Donahey,* 59 Wash. at 133).

Here, Steinberg has no interest in the guardianship or trust estate other than for compensation due him. Therefore, he may appeal the order denying fees and imposing sanctions, but not the order dismissing the trust action and removing him as guardian. The court appointed a new guardian who has no conflicts or adverse interests. This guardian was free to appeal the June 12, 1987, order on behalf of Paula if he deemed it to be in Paula's best interest.

Steinberg also claims a right to appeal the June 12, 1987, order under RAP 2.2, 2.3 and 2.5. However, to appeal or seek review under these rules, one must be a "party". Under RAP 3.1, the only parties who can seek review are "aggrieved parties". Steinberg was removed as guardian on June 12, 1987, and was no longer an aggrieved party who could appeal or seek review on Paula's behalf. As previously stated, an aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected. *Cooper v. Tacoma,* 47 Wn. App. 315, 316, 734 P.2d 541 (1987). The June 12, 1987, findings, conclusion and order did not affect any right of Steinberg's. The only rights that possibly were affected by this order were Paula's, and her rights were protected by the appointment of a new guardian at the same time that Steinberg was removed. Any exercise of legal authority after termination of the guardianship is unauthorized and void. 39 Am. Jur. 2d *Guardian and Ward* § 64, at 57 (1968). Accordingly, Steinberg's appeal of the June 12, 1987, order is dismissed and his arguments regarding this issue will not be addressed.

## CR 11 Violations and Sanctions

Steinberg also appeals from the February 24, 1988, order finding that he had violated CR 11 and imposing sanctions. He contends that he did not violate CR 11, as found by the

trial court, and that he should be awarded his attorney fees that were denied him by the trial court as a CR 11 sanction. The trust and Rettman cross–appeal and contend that the CR 11 sanctions imposed were inadequate. We agree.

CR 11 provides in pertinent part:

The signature of a party or of an attorney constitutes a certificate by him that he has read the pleading, motion, or legal memorandum; that to the best of his knowledge, information, and belief, *formed after reasonable inquiry it is well grounded in fact* and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative *shall impose* upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

(Italics ours.)

We look to the federal courts for guidance in construing CR 11 because it is substantially similar to Fed. R. Civ. P. 11. *Miller v. Badgley,* 51 Wn. App. 285, 301, 753 P.2d 530, *review denied,* 111 Wn.2d 1007 (1988). The federal courts, however, are apparently split regarding the appropriate standard of review:

Some courts have adopted a 3–tiered approach that turns upon the aspect of the trial court's decision being reviewed: "(1) factual determinations are reviewed for clear error; (2) the legal conclusion that the facts establish a violation is reviewed de novo; and (3) the appropriateness of the sanction imposed is reviewed for an abuse of discretion." *United Energy Owners Comm., Inc. v. United States Energy Management Sys.,* 837 F.2d 356, 364 (9th Cir. 1988). Other courts have adopted an

across–the–board abuse of discretion standard. *See generally Thomas v. Capital Sec. Servs.*, [836 F.2d 866] 871–73 [(5th Cir. 1988)] and cases cited therein.

*Miller*, 51 Wn. App. at 301.

 Division Three of this court has recently adopted an abuse of discretion standard to be applied when reviewing a trial court's decision regarding whether there has been a CR 11 violation. *Cooper v. Viking Ventures*, 53 Wn. App. 739, 742, 770 P.2d 659 (1989). We agree with the adoption of this standard.

The record here contains substantial evidence supporting the trial court's conclusion that Steinberg violated CR 11. The deposition of Barry Ernstoff, the attorney who drafted the documents creating the trust and who presented them to Hilda Rettman for signature, establishes that there was no basis in fact to support Steinberg's allegations of fraud, duress and undue influence, and that a simple interview with Ernstoff would have revealed this to Steinberg.

In Ernstoff's deposition, he explained that Hilda Rettman "was a very sharp woman" and "understood fully" the nature of her estate and what she wanted done with it. Hilda Rettman was very concerned about Paula being taken care of financially after her death. When the trust was established, "there was no question that the trustee would be Peter." She wanted Peter as trustee because "Peter has always looked out for Paula and taken care of Paula". Hilda Rettman did not want Paula handling her own money because she did not believe that Paula had the judgment to make her own expenditures. Therefore, "[s]he wanted Peter to be able to exercise his judgment about when or where [Paula] needed money".

Steinberg has also admitted in his own deposition, "Well, I've made no great intensive investigation." In his appellate brief, Steinberg makes the following statement:

I said I did not make an intensive investigation. There was no need. I already knew enough at the very begin-

ning to tell me that Peter Rettman was legally unfit to be his sister's guardian or trustee.

What Steinberg fails to realize is that an attorney's "blind reliance" on a client will seldom constitute a reasonable inquiry for purposes of CR 11. *Miller,* 51 Wn. App. at 302. The trial court had the guardian ad litem's report before it, based on numerous interviews and materials obtained, which indicates that Steinberg took everything that Paula told him at face value when it was obvious that she was developmentally handicapped.

First, the guardian ad litem's report explicitly states that there is "no basis in fact" for the allegations made by Steinberg. Second, the affidavit of Debra Rettman, Peter's wife, controverts these allegations. This affidavit outlines expenditures and other support made by Peter on Paula's behalf. Third, the affidavit of Paula's caseworker at Advocates/Counseling/Resources for Persons with Developmental Disabilities (ACR) states that Steinberg had not contacted her or ACR regarding Paula, even though he was her guardian. However, the caseworker, on her own initiative, contacted Steinberg to discuss Paula's disability. The caseworker also indicated in her affidavit that Paula's husband was manipulating her to "say virtually anything" to break the trust and get money. Fourth, these allegations are also controverted by Barry Ernstoff in his deposition where he describes how Peter was caring for Paula and that he had told Steinberg what Peter had been doing for Paula.

In his deposition, Ernstoff stated that when the trust was first set up, Peter would give Paula "a big lump sum of money, a few hundred dollars . . . and literally the next day couldn't account what would happen to it." Sometimes, hundreds of dollars "would disappear overnight and still there would be no food in the house." Finally, Ernstoff told Peter "that instead of giving her money that he actually pay bills, and in fact, I made him go down to the supermarket and write the check, . . . to go with her and buy gas for her car".

Steinberg had ample opportunity to investigate the allegations made in his complaint filed in the trust case. The following statement from Ernstoff's deposition leaves no doubt that Steinberg was sufficiently aware of Paula's background and that of the trust to have undertaken some kind of investigation regarding the allegations being made:

> I received a call from Mr. Steinburg [*sic*]—a couple of calls from Mr[s]. Steinburg when Paula went to his office, and what I proceeded to do in a narrative form tell him the entire story of the trust and how it was created and why it was discretionary, and what Peter had done subsequent to the creation of the trust just to give Jack some background for purposes of dealing with his own client.

Based on the record before this court, it is clear that Steinberg made no investigation but instead relied completely on statements of Paula and her husband, ignoring any evidence to the contrary. Nothing in the record indicates otherwise.

> An attorney's "blind reliance" on a client, however, will seldom constitute a reasonable inquiry. *Southern Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783, 788 (5th Cir. 1986); *cf. Coburn Optical Indus. v. Cilco, Inc.,* 610 F. Supp. 656, 659 (M.D.N.C. 1985) ("If all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his obligation.").

*Miller,* 51 Wn. App. at 302. Blind reliance on a client should especially be discouraged in a case such as the present one, where the "client" or ward is developmentally disabled. Accordingly, we uphold the trial court's conclusion that Steinberg did violate CR 11 by failing to make a reasonable investigation.

Next, we must determine whether the sanction imposed by the trial court was appropriate. The appropriateness of the sanction imposed is also reviewed for an abuse of discretion. *Miller,* 51 Wn. App. at 303. A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker,* 79 Wn. 2d 12, 26, 482 P.2d

775 (1971). While imposition of some sanction is mandatory,[1] the trial court retains broad discretion to tailor an "appropriate sanction" and to determine against whom the sanction should be imposed. *Miller,* 51 Wn. App. at 303.

> In fashioning an appropriate sanction, the trial judge must of necessity determine priorities in light of the deterrent, punitive, compensatory, and educational aspects of sanctions as required by the particular circumstances. *See Lieb v. Topstone Indus.,* 788 F.2d 151, 158 (3d Cir. 1986). "The basic principle governing the choice of sanctions is that the least severe sanctions adequate to serve the purpose should be imposed." Schwarzer, [*Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181 (1985)] at 201; *Thomas v. Capital Sec. Servs., supra* at 878. Resolution of these matters lies within the informed discretion of the trial court.

*Miller,* 51 Wn. App. at 303–04.

Here the sanction imposed by the trial court was to deny Steinberg both his attorney fees requested and those already awarded but not paid which together amounted to approximately $8,500. However, the trust contends that it incurred in excess of $27,000 defending Steinberg's actions. The trial court declined to impose the further requested sanction of requiring Steinberg to pay such attorneys fees and expenses incurred by Peter Rettman and the trust. The sanction imposed of denying fees is much too lenient in light of the facts of this case and the alleged damages to the trust. Not only did Steinberg fail to make any investigation regarding the claims of a developmentally disabled client, but he also ignored all evidence presented to the contrary. Such conduct by Steinberg has resulted in the accumulation of large legal expenses that otherwise need not have been incurred. We find the sanctions imposed manifestly

---

[1]Once a violation of CR 11 occurs, imposition of sanctions is mandatory: "If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall impose* upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading . . ." *See Miller,* 51 Wn. App. at 300–01.

unreasonable and inadequate to compensate the trust for the costs of defending the action and to deter similar conduct in the future. This case involves a small trust which would have been virtually depleted if Steinberg had been allowed to have his way. His conduct, in failing to investigate under the facts of this case, has been egregious and cannot be condoned. Therefore, we reverse and remand to the trial court to conduct a hearing, take such testimony as is necessary, and exercise its discretion in fashioning a more appropriate sanction tailored to more adequately compensate the trust and prevent such conduct in the future. Because we are remanding on the basis that the sanctions imposed were so inadequate as to amount to an abuse of discretion, our order here will not have a chilling effect on the willingness of courts to impose sanctions in the future. *See Cooper v. Viking Ventures,* 53 Wn. App. 739, 743, 770 P.2d 659 (1989). In fact, the opposite effect should result.

## ATTORNEY FEES AND EXPENSES

In accordance with RAP 18.1, the trust has requested this court to award it attorney fees and expenses related to this appeal. The trust contends that such sanctions are appropriate under RAP 18.7 and 18.9(a).

Under RAP 18.7, CR 11 is made applicable to appeals. *Rhinehart v. Seattle Times Co.,* 51 Wn. App. 561, 580–81, 754 P.2d 1243 (1988). A party or an attorney or both may be assessed litigation expenses, including reasonable attorney fees, for a CR 11 violation. *Rhinehart,* 51 Wn. App. at 581; *see also Layne v. Hyde,* 54 Wn. App. 125, 136, 773 P.2d 83 (1989). Here, the trial court found CR 11 violations by Steinberg below. Steinberg's appeal is based on the same facts that the trial court found to have resulted in CR 11 violations.

If Steinberg would have conducted even a marginal investigation of the claims made in his complaint against the trust, he easily could have discovered that they had no basis in fact. Such an investigation would have prevented both the action below and this appeal. Instead, Steinberg

moved ahead with this appeal, conceding in his appellate brief that he did not make an intensive investigation. Steinberg has ignored the affidavits, depositions, and reports filed in this case and has pursued litigation which, if pursued unchecked, would virtually deplete the small trust which was created to support Paula for the rest of her life. Such conduct is not in Paula's best interests and must be discouraged. Accordingly, we award $10,000 in attorney fees to the trust against Steinberg in this appeal.

To recapitulate, we hold that Steinberg only has standing to appeal the February 24, 1988, order denying his fees and awarding CR 11 sanctions. While we affirm the trial court's ruling that Steinberg violated CR 11, we conclude that the trial court abused its discretion in imposing an inadequate CR 11 sanction. Accordingly, we reverse and remand to the trial court to conduct a hearing as discussed above and exercise its discretion in tailoring a more appropriate sanction. We also award attorney fees and costs on appeal as indicated.

Reversed and remanded.

SCHOLFIELD, J., and WILLIAMS, J. Pro Tem., concur.