# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In re the Matter of the Dependency of:<br><br>BF,<br><br>a minor. | No.  47829-3-II<br><br>PUBLISHED OPINION |

BJORGEN, C.J. — MF[1] appeals the juvenile court's dispositional order for a dependency regarding her child, BF.  She argues that the juvenile court erred in its disposition by declining to order PA, BF's father, to undergo a psychosexual evaluation.  The Department of Social and Health Services (Department) contends that MF lacks standing to appeal this ruling.  We hold that in these circumstances MF qualifies as an aggrieved party with standing to appeal and that the juvenile court did not abuse its discretion by declining to order a psychosexual evaluation for PA.  Accordingly, we affirm.

---

[1] It is appropriate to provide some confidentiality in this case.  Accordingly, pursuant to RAP 3.4, it is hereby ordered that initials will be used in the case caption and in the body of the opinion to identify parties involved.

FACTS

BF is the child of MF and PA. A juvenile court found BF dependent. At the disposition hearing[2] for the dependency, the Department and MF moved the juvenile court to require PA to undergo a psychosexual evaluation before allowing him to have contact with BF. The basis for this request was MF's belief that PA had raped her, causing her to become pregnant with BF. To factually support that claim, the Department submitted a sexual assault protection order forbidding PA from coming into contact with MF. The Department submitted the protection order to "simply establish that the mother sought one out, not that . . . there was any type of contested hearing" between MF and PA. Report of Proceedings (RP) at 29.

In addition to the protection order, the Department submitted police reports detailing interviews with MF and PA in which they described the nature of their sexual encounter. In her interview, MF recounted that PA invited her into his home and that they slept together in the same bed. When she woke up in the morning, she discovered PA penetrating her with his fingers and penis. MF stated that "she was so stunned that she was afraid if she said no or moved away he would just force himself on her." Exh. 2 at 3. PA recounted in his interview that MF instigated the sexual encounter by putting PA's hand on her bottom and repeating that she wanted his "cock." Exh. 2 at 7. He stated that he only agreed to have sex after her insistence. A final police report indicates that the prosecutor declined to charge PA with any crime because there was not "sufficient evidence to pursue criminal prosecution." Exh. 2 at 11.

---

[2] The disposition hearing allowed the juvenile court to outline services for the parents and child to serve the goals of the dependency. *See In re Interest of Mahaney*, 146 Wn.2d 878, 891, 51 P.3d 776 (2002).

Based on this evidence, the Department contended that the psychosexual evaluation was appropriate despite its intrusiveness because it could potentially protect BF and help PA reunify with BF. The Department's counsel stated that

> [w]e understand that this evaluation is intrusive, but when balancing the intrusiveness to the father with the safety of [BF], that [BF] has to win out in this, and that these concerns have to be dispelled before the department would be willing to advocate or ask this Court to place [BF] with his father.

RP at 25.

After hearing arguments from both sides, the juvenile court denied the request for a psychosexual evaluation, stating:

> I'm going to deny the request for the psychosexual. I'm not persuaded there's sufficient evidence of sexual deviancy here to warrant it. I recognize that there is a reaction from the mother as to the events that took place on the night in question. But we have two adults, and one interpretation of the investigating officer's report is that it was consensual sex, and another interpretation could be that it was not. And just because there is that uncertainty, I don't believe requires the full exploration of the father's sexuality.
> . . . .
> Certainly, if other incidents of inappropriate sexual conduct came forward, the Court could review the issue, but, based on this record, I'm not going to order it today.

RP at 30.

MF appealed and moved this court to accelerate review of her case under RAP 18.13A. RAP 2.2(a)(5). Pending the outcome of the motion, the Department reversed its position at trial and argued that the juvenile court did not err by declining to order the psychosexual evaluation and, further, that MF lacked standing to appeal that determination. Our court commissioner denied MF's motion to accelerate review and dismissed her appeal, agreeing with the Department that she had no standing.

MF moved to modify the commissioner's ruling, which we granted. We now address whether MF had standing to appeal the dispositional order and whether the juvenile court abused its discretion by not ordering a psychosexual evaluation.

ANALYSIS

I. STANDING

The Department argues that MF lacks standing to appeal because she is not an aggrieved party. We disagree.

Under RAP 3.1, "[o]nly an aggrieved party may seek review by the appellate court." The Basic Juvenile Court Act similarly provides that any person "aggrieved" may appeal a court's final order. RCW 13.04.033. Generally, "[a]n aggrieved party is one who was a party to the trial court proceedings, and one whose property, pecuniary and personal rights were directly and substantially affected by the lower court's judgment." *In re Welfare of Hansen*, 24 Wn. App. 27, 35, 599 P.2d 1304 (1979).[3]

In support of its position that MF lacks standing, the Department compares her situation to the appellants in *In re Guardianship of Lasky*, 54 Wn. App. 841, 776 P.2d 695 (1989) and *Breda v. B.P.O. Elks Lake City 1800 So-620*, 120 Wn. App. 351, 90 P.3d 1079 (2004). In *Lasky*, 54 Wn. App. at 843-44, an attorney was appointed by the court to be the guardian for a beneficiary of a trust. The attorney sued the trustee on the beneficiary's behalf, but did not prevail. *Id.* at 845, 847. In the same proceeding, the trial court removed the attorney as guardian and appointed a new guardian for the beneficiary. *Id.* at 847, 850. The attorney appealed the ruling removing him as guardian, but the *Lasky* court held that he lacked standing and that only

---

[3] "In rare cases," a person who is not formally a party to a case may have standing to appeal a trial court's order because the order directly affects that person's legally protected interests. *Polygon Nw. Co. v. Am. Nat. Fire Ins. Co.*, 143 Wn. App. 753, 768, 189 P.3d 777 (2008).

the replacement guardian, who now represented the beneficiary's interest, could appeal that determination. *Id.* at 850.

A similar outcome occurred in *Breda*, 120 Wn. App. at 352, where the trial court imposed sanctions on the Bredas' counsel. The attorney did not appeal the judgment, but the Bredas did. *Id.* The court held that while the attorney had standing to appeal the sanctions, the Bredas did not, since they were not damaged by the sanctions against their counsel. *Id.* at 353. Because the attorney did not appeal the sanctions, the court dismissed the appeal brought by the Bredas. *Id.*

*Lasky* and *Breda* illustrate situations when one's perceived injury falls below the threshold to qualify as an aggrieved party permitted to appeal a judgment. The interest of a former guardian in appealing his removal and the interest of a client in appealing a sanction against an attorney, though, are of much less moment than the interest of a parent in preventing sexual harm to her child and in preserving and mending family ties with that child.

This principle is supported by *Hansen*, 24 Wn. App. at 29, where the Corderos became the guardians of a child and raised the child for eight years. The child's mother moved a California court to terminate their guardianship rights, which the California court granted. *Id.* at 30. The Corderos then petitioned a Washington court to declare the child dependent, which it did. *Id.* The Washington court also expressed its intention to effect an eventual reunification of the natural mother with the child. *Id.* On appeal, the mother argued the Corderos had no standing to appeal, but the *Hansen* court disagreed:

> As Tammy's guardians for a period in excess of 8 years, the Corderos' personal rights are directly affected by the juvenile court's order and judgment, especially in light of the judge's expressed intent to effect an eventual reunification between Tammy and her natural mother. Faced with the possibility of forfeiture of a valuable human relationship, we find the Corderos have standing to appeal.

*Id.* at 35; *see also State v. Casey*, 7 Wn. App. 923, 926-27, 503 P.2d 1123 (1972) (mother deemed an aggrieved party in a filiation proceeding).

The statute governing dependencies and terminations begins with the legislative declaration that "the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized." RCW 13.34.020. Our case law reflects this principle through holdings that the purpose of a dependency is "to ensure the safety of the child and reunification with the parent," *In re Interest of Mahaney*, 146 Wn.2d 878, 891, 51 P.3d 776 (2002), and that the "primary purpose of a dependency is to allow courts to order remedial measures to preserve and mend family ties, and to alleviate the problems that prompted the State's initial intervention." *In re Dep. of T.L.G.*, 126 Wn. App. 181, 203, 108 P.3d 156 (2005).

MF challenges the failure of the juvenile court to order a psychosexual evaluation of PA, arguing that this places her child at unreasonable risk of harm. The threat of sexual harm to a child from a family member directly implicates the child's right to health and safety and the purpose of preserving and mending family ties. The threat to these interests in these circumstances directly affects the personal right of MF, as a parent, to the safety of her child and the mending of family ties under RCW 13.34.020, *Mahaney*, and *T.L.G.*, discussed above. Therefore, we hold that under these circumstances MF is aggrieved by this aspect of the dispositional order and has standing to appeal it.

## II. PSYCHOSEXUAL EVALUATION

MF argues that the juvenile court abused its discretion either (1) by failing to order the psychosexual evaluation based on the evidence before it or (2) by failing to conduct a further inquiry to determine whether a psychosexual evaluation may have helped protect BF or improved the chances for reunification. For the reasons discussed below, both arguments fail.

The juvenile court has broad discretion in dealing with matters of child welfare, and we review orders issued in dependency cases for an abuse of discretion. *In re Dep. of R.W.*, 143 Wn. App. 219, 223, 177 P.3d 186 (2008). The juvenile court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005).

Dependency proceedings are designed to protect children from harm, help parents alleviate the problems that led to intervention, and reunite families. *In re Dep. of P.H.V.S.*, 186 Wn. App. 167, 181, 339 P.3d 225 (2015), *review denied (*Aug. 17, 2015). A juvenile court is thus statutorily authorized to order a wide array of services for the parents and child that may effectuate those goals. *See generally In re Dep. of D.C-M.*, 162 Wn. App. 149, 158-60, 253 P.3d 112 (2011) (citing chapter 13.34 RCW); *see also Mahaney*, 146 Wn.2d at 891. Within the scope of its authority, a juvenile court can order a psychosexual evaluation if "attuned to the needs of an individual case." *D.C-M.*, 162 Wn. App. at 160.

The parties rely on *D.C-M* for their respective positions. In *D.C-M*, KM was the mother of several children found to be dependent. *Id.* at 152-53. During the dependency proceedings, the children had disclosed acts of sexual abuse by KM. *Id.* at 153-55. However, after reviewing the evidence, the prosecutor declined to charge KM. *Id.* Similarly, the Department found the children's allegations inconclusive. *Id.* The juvenile court nonetheless ordered a psychosexual evaluation based on the children's repeated disclosures that KM abused them. *Id.* at 156-57. The *D.C-M* court reversed in part because the children's unfounded disclosures did not support the juvenile court's determination that the proposed psychosexual evaluation would be helpful for reunification of the family. *Id.* at 162. It remanded the case for the juvenile court to determine, inter alia, what underlying sexual abuse allegations served as a basis for the

psychosexual evaluation, whether such an evaluation was necessary, and whether it would further the goal of reunification. *Id.* at 162-63.

Here, unlike *D.C-M*, the juvenile court *declined* to order a psychosexual evaluation for PA based on the evidence before it. The police reports and sexual assault protection order were submitted to the juvenile court, and the attorneys for each side were permitted to make arguments regarding the appropriateness of the psychosexual evaluation. Based on that, the juvenile court found insufficient evidence of sexual deviancy to require a psychosexual evaluation of PA. The juvenile court noted that if other evidence emerged later indicating other inappropriate sexual misconduct, it may reevaluate the need for a psychosexual evaluation.

On this record and viewed in light of *D.C-M*, the juvenile court did not abuse its discretion. The juvenile court weighed both the parties' arguments and evidence and reasonably decided that a psychosexual evaluation was not appropriate at the time to carry out the goals of the dependency. Contrary to MF's position, the police reports and sexual assault protection order do not per se demonstrate that the juvenile court abused its discretion in declining to order the psychosexual evaluation. The protection order was only offered to establish that MF sought one and not that any contested hearing took place between her and PA. Further, the police reports do not conclusively establish that PA raped MF; rather, the reports only provide conflicting perspectives about the night BF was conceived. Deference to the juvenile court is required in deciding which services best carry out the goals of a dependency. *See D.C-M.*, 162 Wn. App. at 158-60; *see In re Welfare of A.B.*, 181 Wn. App. 45, 60, 323 P.3d 1062 (2014). On this evidence, we cannot say the juvenile court's ruling was manifestly unreasonable or based on untenable grounds or reasons. The juvenile court did not abuse its discretion.

MF further contends that the evidence before the juvenile court required it to at least conduct a further inquiry to determine whether a psychosexual evaluation would protect BF and promote reunification. At the juvenile court proceeding, the Department argued that BF's safety outweighed the intrusive impact of a psychosexual evaluation on PA and that it could not advocate for BF to be placed with PA without the psychosexual evaluation. Thus, although the juvenile court did not explicitly state it considered BF's safety or the impact on reunification when it made its ruling, those interests were argued to the juvenile court and were among the interests the court was required to consider. *See Mahaney*, 146 Wn.2d at 891. No legal authority required the juvenile court to articulate which specific goals of the dependency would or would not be served when declining to order a psychosexual evaluation. For these reasons, we presume the court fully considered the evidence before it.

As held above, declining to order the psychosexual evaluation on the basis of evidence before the juvenile court was neither unreasonable nor based on untenable grounds or reasons. Under the abuse of discretion standard, the mere presence of evidence on either side of the issue, without more, does not mandate further investigation by the juvenile court. Therefore, the juvenile court considered the evidence and arguments before it and did not abuse its discretion by declining to conduct a "further inquiry" to determine whether a psychosexual evaluation was warranted to protect BF and promote reunification.

Accordingly, MF's claims fail.

CONCLUSION

MF had standing to appeal the juvenile court's dispositional order, and the juvenile court did not abuse its discretion by declining to order a psychosexual evaluation for PA. Therefore, we affirm.

_____, C.J.
BJORGEN, C.J.

We concur:

_____
WORSWICK, J.

_____
LEE, J.