

**FILED**
**JANUARY 20, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| In the Matter of the Dependency of | ) ) ) | No. 37823-3-III Consolidated with |
| E.A.C., | ) |  |
| _____ | ) |  |
|  | ) | No. 37824-1-III |
| In the Matter of the Dependency of | ) |  |
|  | ) | and |
| N.L.C. | ) |  |
| _____ | ) |  |
|  | ) | No. 37825-0-III |
| In the Matter of the Dependency of | ) |  |
|  | ) | and |
| E.M.C. | ) |  |
| _____ | ) |  |
|  | ) | No. 37826-8-III |
| In the Matter of the Dependency of | ) |  |
|  | ) |  |
| N.R.C. | ) |  |
|  | ) | UNPUBLISHED OPINION |
|  | ) |  |

FEARING, J. — T.R.-S. appeals on procedural grounds the grant of a motion by the

father of her children to dismiss a dependency action. She asserts the trial court

committed constitutional and nonconstitutional error when refusing her motion to

continue the hearing on the motion to dismiss. We disagree and confirm the dismissal of

the dependency.

No. 37823-3-III, cons. with Nos. 37824-1-III, 37825-0-III, 37826-8-III
*In re Dependency of E.A.C.; N.L.C.; E.M.C.; N.R.C.*

FACTS

This dependency action concerns four of the five children of T.R.-S.  D.C. is the father of the four children.  Although the State filed separate dependency actions for each child, we consolidated the four actions on appeal.  We refer to the case as being one dependency action involving all four children.

On February 8, 2019, law enforcement visited the home where T.R.-S. lived with her five children.  Following the visit, law enforcement placed the children into protective custody.

On February 14, 2019, the State filed dependency petitions for the five children.  At a placement hearing, the juvenile court placed the four children fathered by D.C. with their paternal grandmother.  The court permitted D.C. to reside in the same home as the children and to have unsupervised contact with them.  The juvenile court ordered D.C. to complete chemical dependency assessments, comply with recommended chemical dependency treatment, complete a parenting assessment, complete an Engaging Fatherhood Program, and maintain regular contact with the assigned social worker.  On April 16, 2019, D.C. agreed to orders of dependency.

On July 12, 2019, following a contested hearing, the juvenile court entered an order of dependency also as to the mother, T.R.-S.  The disposition order directed T.R.-S. to complete a parenting assessment, complete a neuropsychological evaluation, engage in

2

individual mental health counseling, complete a chemical dependency evaluation, and contact the assigned social worker on a regular basis, among other responsibilities.

T.R.-S. did not appear at the first dependency review hearing on August 12, 2019. During the hearing, the juvenile court noted that the court intended the continuing services for the parents to address T.R.-S.'s mental health issues, parenting deficits, and potential chemical dependency, and D.C.'s inability to provide a safe, stable living environment for the children in light of their mother's untreated mental health and potential chemical dependency.

The juvenile court next conducted a review hearing on August 26, 2019. T.R.-S. failed to appear again. The court noted that T.R.-S. did not participate in services. The court found D.C. in compliance with the dependency order and placed the four children in his care. The State retained the right to conduct unannounced health and safety visits to D.C.'s home.

On December 9, 2019, the juvenile court convened a permanency planning review hearing. T.R.-S. again failed to attend the hearing. The court found that T.R.-S. no longer attended supervised visitation with the children. On December 16, the juvenile court granted the parties permission to proceed with a parenting plan in family court.

PROCEDURE

On October 5, 2020, D.C. moved to dismiss the dependency because of his completion of ordered services and the family court's entry of a final parenting plan. The

3

No. 37823-3-III, cons. with Nos. 37824-1-III, 37825-0-III, 37826-8-III
*In re Dependency of E.A.C.; N.L.C.; E.M.C.; N.R.C.*

Washington State Department of Children, Youth, and Families (DCYF) supported

D.C.'s motions. D.C. scheduled his motion for a hearing on October 22, 2020.

On October 15, 2020, T.R.-S. moved to continue the hearing on D.C.'s motion to

dismiss. T.R.-S. averred that she would be out of town on the October 22 hearing date,

that she would then lack access to a phone or the internet, that she wished to attend the

hearing in person, and that she opposed D.C.'s motion to dismiss.

The juvenile court held a hearing on the motion to continue the same day of its

filing. T.R.-S. did not attend the hearing. T.R.-S.'s attorney remarked during the motion

hearing:

> I did try to get a hold of my client so she could be present today in
> order to give the court any more information if your Honor had questions.
> Unfortunately she's not able to join by phone today.
> I—do have limited information. I understand that she is going out of
> town so she cannot appear for the motion on the 22nd. And I'm being told
> that where she's going she does not have access to internet or phone, which
> would make her unavailable to attend the motion on the 22nd and she
> would like to be able to attend the motion.

Report of Proceedings (RP) (Oct. 15, 2020) at 121. The juvenile court asked T.R.-S.'s

counsel to identify the location of T.R.-S.'s upcoming travel. Counsel responded that she

lacked that information.

During the continuance motion hearing, D.C.'s counsel argued against the motion:

> [D.C.] has lived with the children (inaudible) some time. We even
> brought a motion to place the children in his care in August of 2019. He
> completed a permanent parenting plan September 8th of this last year.

4

No. 37823-3-III, cons. with Nos. 37824-1-III, 37825-0-III, 37826-8-III
*In re Dependency of E.A.C.; N.L.C.; E.M.C.; N.R.C.*

> [T.R.-S.] has not seen these children since last Halloween, which—
> over the objection of [D.C.] because she just showed up.  And—except for
> a parenting assessment.
>      So, your Honor, I don't know what else she's going to bring to
> continue this matter on her request to not have this dismissed.  It really is
> ripe for this (inaudible).  [D.C.] and the children are doing well.  They've
> done everything that they need to do.

RP (Oct. 15, 2020) at 122.

The juvenile court denied the motion to continue.  The court noted that it would

hear the motion to dismiss the dependency on pleadings, rather than live testimony.

Therefore, the presence of a party was not necessary.  The court emphasized that the

children needed permanency and the case had already lasted too long.  D.C. had given

notice of the motion to dismiss to T.R.-S. on October 1.  The juvenile court also

highlighted that T.R.-S. failed to inform the court of her destination and why she could

not appear by zoom or phone.  The court gave T.R.-S. the ability to file a response to the

dismissal motion on the day before the October 22 hearing.

On October 21, T.R.-S. filed a declaration in opposition to D.C.'s motion to

dismiss the dependency.  T.R.-S. declared in part:

> [D.C.] is a convicted felon for selling and possessing drugs.  [D.C.]
> has been convicted of two DUIs a domestic violence minor possession of
> drugs and alcohol & welfare fraud.  [D.C.] has been dishonest & has
> provided false and misleading statements to law-enforcement, Court and
> other agencies. . . .
>      . . . .
>      It is not in the best interest of our children to be raised by a father,
> has never been a big part of their life and two has committed fraud and
> moral perpetuity—and welfare fraud in the state of Washington [and] in the

5

state of Idaho. [D.C.] is also an alcoholic and drinks and drives[.] I am very afraid & fear he will get in an accident with my children in the vehicle. My son . . . had witnessed this personally multiple times with [D.C.] drinking and driving with an open container and operating a motor vehicle with all five children in the vehicle.

It would be in the best interest of my children's safety, mental health, and well-being, to not dismiss the dependency at this time until a parenting plan could be properly served and approved by a family court judge.

Clerk's Papers (CP) at 1127-28.

T.R.-S. did not attend the October 22, 2020 hearing on the motion to dismiss the dependency. During the hearing, D.C.'s counsel argued in support of the motion:

This case started January-February of 2019. We went through a shelter care hearing that had eight hours—approximately eight hours of testimony, which may be the longest that I've seen. The decision was made at that time to place the children with [D.C.'s] mother, and with the understanding that [D.C.] would live at the residence with the children. So basically he was there taking care of the children from that time.

In August of 2019, your Honor, we brought a motion changing placement from [D.C.'s] mother to [D.C.]. . . .

. . . .

Your Honor, then [D.C.] filed a temporary motion for—a parenting plan. (Inaudible) of COVID that got set out, and set out and set out—it was set in March of 2020, was not able to be heard by you because of the COVID requirements. But in the meantime it continued on in the superior court in front of Judge Plese. [D.C.] did go in on September 8th, I think it was, and did a final parenting plan that I think has been provided to all parties and the court, which gave him custody of the children.

RP (Oct. 22, 2020) at 130-31.

During the October 22 hearing, DCYF and the guardian ad litem argued in support of D.C.'s motion to dismiss the dependency. T.R.-S.'s attorney argued:

6

> First I want to thank the court for allowing me to extend the deadline on getting this reply filed yesterday. I was able to meet with my client yesterday and she provided—a statement—declared under declaration.
>
> I think what her concerns are are outlined in her declaration. Obviously [T.R.-S.] objects to the request for dismissal; she would like some additional time in order to—do what she reflected in her declaration such as seek private counsel, also (inaudible) the motion for the new parenting plan in place. [T.R.-S.] indicates that she (inaudible) was not provided sufficient notice so therefore the final parenting plan that was put in place is not an accurate parenting plan.
>
> As the court can see in her declaration she also has concerns about [D.C.'s] history with regards to criminal history and his ability to safely care for the children. She also has an interest in making sure that all of her children have right to counsel. She does not believe it's in the best interests of her children at this time to continue to be placed in their father's care, and wishes the court to remain open, the dependency court to remain open so that the department can continue to have involvement and make sure that the kids are safe.

RP (Oct. 22, 2020) at 135-36.

At the conclusion of the October 22 hearing, the juvenile court responded to T.R.-S.'s declaration:

> [T.R.-S.] has put the court on notice early in the case as to her position regarding [D.C.]. The allegations that she has made with respect to [D.C.] regarding his criminal history, the allegations of selling and possessing drugs, and all the things contained in her—in her declaration, are not raised for the first time in this declaration, they've been raised throughout the dependency. And the department has had an opportunity to independently evaluate those concerns and provide underlying services that led to the dependency as it relates to both parents, and in this case for [D.C.] the department has exhausted providing all remedies in that [D.C.] satisfied those underlying circumstances.
>
> The children have been in his care, and based on the facts presented to this court are doing well in his care.

7

> The other allegations that . . . [T.R.-S.] has made with respect to the parenting plan case is that she feels that the motion and order for default on the final parenting plan should be vacated.
>
> With respect to that particular circumstance, it's certainly possible that [T.R.-S.] could be correct. I don't know. It's not for me to evaluate the viability of that motion. But it certainly is a motion available to [T.R.-S.].

RP (Oct. 22, 2020) at 138-39.

The juvenile court granted D.C.'s motions to dismiss. The court thereafter entered findings that read in part:

> This case has been active since February of 2019. This court conducted a thorough fact finding hearing and made extensive findings at the conclusion of that hearing, and has presided over multiple review hearings since then. The allegations that [T.R.-S.] has made regarding [D.C.] in response to this motion have been previously raised, and the Department has had the opportunity to evaluate those concerns and to offer services to [D.C.].
>
> [D.C.] has remedied any deficiencies that led to the need for out-of-home placement as to him, and the children have been returned to his care for more than six months and are doing well in his care. An appropriate parenting plan/residential schedule has been entered. . . . [T.R.-S.] has requested a continuance of the motion to dismiss so that she can attempt to vacate that parenting plan, but the juvenile dependency court is not the proper venue for relief. Family court is the proper venue for [T.R.-S.] to pursue relief with regard to the parenting plan.
>
> The permanent plan of return to the father has been achieved and court supervision is no longer necessary.

CP at 1149-54, 1158-59 (underline omitted).

## LAW AND ANALYSIS

On appeal, T.R.-S. contends that the juvenile court denied her due process when refusing to postpone the October 22 hearing date. She also argues that the court abused

its discretion under court rules when rejecting her motion to continue. In turn, the State asserts that T.R.-S. lacks standing on appeal to challenge the juvenile court's order of dismissal. We address the State's procedural argument first.

## T.R.-S. Standing

The State's assertion of lack of standing implicates the concept of "aggrieved party" under RAP 3.1. The State maintains that the dismissal of the dependency lacked any effect on T.R.-S.'s parental rights and thus she is not an aggrieved party. According to the State, the dependency action achieved its goal of reunifying the children with a fit parent and T.R.-S. may pursue her concerns in family court.

T.R.-S. argues that she may assert a challenge on appeal based on her interest in the health and safety of the four children. She asserts that the dismissal removed state oversight of the children's well-being and ended her access to remedial services necessary for full reunification.

"Only an aggrieved party may seek review by the appellate court." RAP 3.1. Under statute in juvenile court proceedings, "[a]ny person aggrieved by a final order of the court may appeal said order[.]" RCW 13.04.033(1). To be aggrieved, an appellant must have been a party in the trial court proceedings and have had her "property, pecuniary and personal rights . . . directly and substantially affected by the lower court's judgment." *In re Welfare of Hansen*, 24 Wn. App. 27, 35, 599 P.2d 1304 (1979).

No. 37823-3-III, cons. with Nos. 37824-1-III, 37825-0-III, 37826-8-III
*In re Dependency of E.A.C.; N.L.C.; E.M.C.; N.R.C.*

In *In re Dependency of B.F.*, 197 Wn. App. 579, 389 P.3d 748 (2017), this court examined whether a party possessed standing to appeal a juvenile court decision in a dependency proceeding. The appellant mother, M.F., argued that the juvenile court erred in denying her request for the father to undergo a psychosexual evaluation. This court held that the mother had standing because:

> The threat of sexual harm to a child from a family member . . . directly affects the personal right of MF, as a parent, to the safety of her child and the mending of family ties. . . . Therefore, we hold that under these circumstances MF is aggrieved by this aspect of the dispositional order and has standing to appeal it.

*In re Dependency of B.F.*, 197 Wn. App. at 586.

In reaching its decision, this court, in *In re Dependency of B.F.*, relied on statutes and case law declaring that dependency proceedings seek to ensure a child's safety and to work toward reunification with the family unit. A dependency interferes with a family unit on the principle that "the child's health and safety shall be the paramount concern." RCW 13.34.020. Services are "provided to a child and parent . . . to ensure the safety of the child and reunification with the parent." *In re Interest of Mahaney*, 146 Wn.2d 878, 891, 51 P.3d 776 (2002).

*In re Dependency of B.F.* and the purposes behind dependency actions convince us to hold that T.R.-S. enjoys aggrieved party status for purposes of this appeal. She possesses an interest in the welfare and safety of her children. T.R.-S., in turn, holds an interest in the State continuing to monitor the environment of her children. T.R.-S.

10

No. 37823-3-III, cons. with Nos. 37824-1-III, 37825-0-III, 37826-8-III
*In re Dependency of E.A.C.; N.L.C.; E.M.C.; N.R.C.*

argued to the juvenile court, among other points, that D.C. was an alcoholic who drank while driving with the children in the vehicle.

Continuance under Nonconstitutional Grounds

We move to the merits of T.R.-S.'s appeal. Because we attempt to avoid constitutional questions, we first address whether the trial court erred under state procedural law when denying the motion to continue.

This court reviews a decision to deny a continuance for manifest abuse of discretion. *In re Welfare of R.H.*, 176 Wn. App. 419, 424, 309 P.3d 620 (2013). Nevertheless, T.R.-S. does not contend the trial court abused its discretion. For this reason alone, we affirm the trial court. We would issue the same ruling even if T.R.-S. argued abuse of discretion.

A juvenile court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *In re Welfare of R.H.*, 176 Wn. App. 419, 424 (2013). A juvenile court "takes into account a number of factors, including diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted." *In re Welfare of R.H.*, 176 Wn. App. at 424-25 (quoting *In re Dependency of V.R.R.*, 134 Wn. App. 573, 581, 141 P.3d 85 (2006)).

The juvenile court acted reasonably, based on many factors, when denying T.R.-S.'s motion to continue. Those factors include the need for permanency of the children, T.R.-S.'s absence from other hearings, T.R.-S.'s failure to identify her intended

11

location on October 22, T.R.-S.'s failure to explain her lack of access to a phone or Internet, T.R.-S.'s ability to file a declaration and memorandum in opposition to the motion to dismiss, the lack of live testimony at the October 22 hearing, and T.R.-S.'s counsel's availability to argue T.R.-S.'s position at the hearing.

### Constitutional Due Process

Next T.R.-S. maintains that the juvenile court violated her and the children's right to procedural due process by holding a hearing, on the father's motion to dismiss the dependency, in the mother's absence. In so arguing, T.R.-S. emphasizes her fundamental liberty interest in the care and custody of her children.

The State contends that T.R.-S. did not preserve her due process claim for an appeal because she never presented the constitutional contention before the juvenile court. We proceed to address the merits of the constitutional argument, however. RAP 2.5(a) directs this reviewing court to entertain manifest error affecting a constitutional right for the first time on appeal. When an appellant successfully shows a procedural due process violation, she need not establish any other prejudice to obtain review. *In re Welfare of M.B.*, 195 Wn.2d 859, 877, 467 P.3d 969 (2020). We will not know whether T.R.-S. establishes a due process violation until we address her challenge.

When a state seeks to deprive a person of a protected interest, procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation. *Mathews v. Eldridge*, 424 U.S. 319,

12

No. 37823-3-III, cons. with Nos. 37824-1-III, 37825-0-III, 37826-8-III
*In re Dependency of E.A.C.; N.L.C.; E.M.C.; N.R.C.*

348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Olympic Forest Products, Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 422, 511 P.2d 1002 (1973). The opportunity to be heard must be at a meaningful time and in a meaningful manner appropriate to the case. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the United States Supreme Court announced a three-prong test to employ when assessing what steps due process demands in discrete circumstances. Since this proclamation, all state and federal courts have ritually applied the three-prong test. To determine what procedures the constitution requires in a particular case, a court must consider: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The United States Supreme Court has never explained how to apply and weigh these factors.

Because the United States Supreme Court implanted a convoluted mouthful into each of the three due process factors, we disassemble the *Mathews* test into ten steps. First, the claimant must identify his or her interest impacted by the court process. Second, the challenger must assess the importance of this private interest. Third, the

13

claimant must identify the process actually received. Fourth, the challenger must isolate

the risk inherent in the process received. Fifth, the claimant must pinpoint the process he

or she deems due. Sixth, the challenger must explain why the substitute procedures will

reduce the risk of an erroneous deprivation. Seventh, the claimant or the government

must identify the government's interest behind the deprivation of the private interest.

Eighth, the challenger or the government must appraise the importance of the

government's interest. Ninth, the government must calculate or divulge the financial and

other burdens imposed by the claimant's suggested procedures. Tenth, the court must

weigh the private interest against the government interest in the context of the risk of an

erroneous deprivation of the private interest based on the actual and suggested

procedures. We analyze these steps.

The claimant must first identify his or her interest impacted by the government.

T.R.-S. identifies this interest as the companionship, care, and custody of her children.

More specifically, T.R.-S. asserts the interests in the health and safety of her children and

the government's monitoring of the health and safety. T.R.-S. may also assert her interest

in continuing services.

Second, the challenger must assess the importance of this private interest. Parents

have a fundamental liberty interest in the care, custody, and management of their children

that does not evaporate because they have not been model parents or have lost temporary

custody of their children to the State. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct.

14

1388, 71 L. Ed. 2d 599 (1982).  Children in dependency proceedings have liberty interests in being free from unreasonable risks of harm and a right to reasonable safety. *In re Dependency of M.S.R.*, 174 Wn.2d 1, 20, 271 P.3d 234 (2012).

We note that T.R.-S. did not participate in services and failed to visit the children for more than one year.  She provides no legal authority for any right to receive government services to render her a better parent.

Third, the claimant must identify the process actually received.  T.R.-S. received notice of D.C.'s motion and an opportunity to be heard by the juvenile court in opposition to the motion.  She exercised the right to file a declaration opposing the motion and the right for counsel to argue against the motion.

Fourth, the challenger must isolate the risk inherent in the process received.  The risk identified by T.R.-S. is the endangerment of her children and the lack of monitoring by the government.

Fifth, the claimant must pinpoint the process he or she deems due.  T.R.-S. identifies the additional process she sought as her presence at the motion hearing.

Sixth, the challenger must explain why the substitute procedures would reduce the risk of an erroneous deprivation.  T.R.-S. argues that her lack of presence rendered an erroneous decision more likely because she was not able to consult with her attorney during the course of the hearing.  Her argument assumes that she held personal knowledge of the circumstances under review, but we doubt such.  T.R.-S. had not seen

15

the children for a year. T.R.-S. did not disclose any percipient observations of the children with their father during the dependency proceeding. She lacked knowledge of how the services received by D.C. advanced his parenting skills.

Seventh, the claimant or the government must identify the government's interest behind the deprivation of the private interest. The government possessed the interest of timely returning the children to a capable parent without the restrictions of a dependency. The government possessed the interest of ending the cost of the dependency. The children held the interest of a speedy resolution of a dependency proceeding that facilitated the right to a safe, stable, and permanent home. RCW 13.34.020. D.C. held the same fundamental and constitutionality protected interest in the care, custody, and companionship of his children without constant government monitoring.

Eighth, the challenger or the government must appraise the importance of the government's interest. T.R.-S. does little to identify the importance of the government's interest. We deem the government's interest to hold some importance, while the interest of the father and the children holds higher priority.

Ninth, the government must calculate or divulge the financial and other burdens imposed by the claimant's suggested procedures. We gauge the burden to be slight, because T.R.-S. wanted a short continuance. Still, the government held the continued burden of monitoring the children's care in the meantime.

16

No. 37823-3-III, cons. with Nos. 37824-1-III, 37825-0-III, 37826-8-III
*In re Dependency of E.A.C.; N.L.C.; E.M.C.; N.R.C.*

Tenth, the court must weigh the private interest against the government interest in the context of the risk of an erroneous deprivation of the private interest based on the actual and suggested procedures. We deem the government interest to outweigh T.R.-S.'s interest because the hearing did little to impact T.R.-S.'s interests. DCYF already investigated the safety of the children with their father. The juvenile court had previously addressed T.R.-S.'s concerns. T.R.-S. could employ the family court to protect her interests. We wonder if T.R.-S. would even appear at a later hearing on the motion to dismiss. T.R.-S. fails to mention how her presence would have supplied the court more accurate information about the children's wellbeing. In short, any risk was nominal.

T.R.-S. relies primarily on *In re Welfare of M.B.*, 195 Wn.2d 859 (2020). M.B.'s father N.B. was incarcerated. A juvenile court found M.B. dependent and placed him in a nonrelative foster home. The Department of Social and Health Services filed a motion to terminate the parent-child relationship between N.B. and M.B. When the termination trial commenced, the Department of Corrections failed to transport N.B. to the trial. The court proceeded with trial, and N.B.'s counsel cross-examined the State's witnesses. N.B. testified telephonically but did not otherwise enjoy the opportunity to consult with his attorney about the proceedings. The juvenile court terminated N.B.'s parental rights.

On appeal, in *Welfare of M.B.*, the Supreme Court addressed whether due process requires an incarcerated parent's physical presence at a trial determining termination of

17

parental rights. The court held that an incarcerated parent has no absolute right to appear in person, but an incarcerated parent who is not physically present must be given a meaningful opportunity to be heard and defend through alternative procedures. The court concluded that the alternative procedures afforded to N.B. unacceptably risked erroneous deprivation of his parental interest:

> [A] meaningful opportunity to be heard in a parental termination case includes the opportunity to hear the State's evidence and consult with counsel. Because the outcome of a parental termination hearing turns on a subjective standard and a parent has some of the most intimate knowledge of the facts that bear on that standard, their inability to aid counsel in scrutinizing the State's evidence creates a significant risk of error.
> . . . .
> . . . Nothing in the record suggests that despite N.B.'s physical absence from trial, the court employed alternative procedures for N.B. to review the State's evidence and consult with counsel about recalling witnesses for additional cross-examination.
> . . . N.B. missed essentially the entire presentation of the State's evidence and was afforded no alternative means to review that evidence and contribute to his defense.

*In re Welfare of M.B.*, 195 Wn.2d at 874-75 (footnote omitted).

We observe significant differences between the hearing on D.C.'s motion to dismiss and the termination trial in *In re Welfare of M.B.* The juvenile court terminated N.B.'s parental rights in the latter case. The dismissal of the dependency of T.R.-S.'s four children did not terminate her parental rights. Instead, T.R.-S. could seek custody of the children and argue for limitations on the father's access to the children in the family court. The juvenile court hosted live testimony in *Welfare of M.B.* The juvenile court did

No. 37823-3-III, cons. with Nos. 37824-1-III, 37825-0-III, 37826-8-III
*In re Dependency of E.A.C.; N.L.C.; E.M.C.; N.R.C.*

not entertain live testimony in T.R.-S.'s hearing, and the court allowed T.R.-S. to untimely file a declaration in response to the motion. T.R.-S. gave no adequate explanation as to why she could not participate by phone or Internet. We recognize that the Supreme Court, in *Welfare of M.B.*, wanted N.B. to maintain access to his lawyer to help with questioning and argument during the trial. T.R.-S. does not identify any prejudice because of her inability to speak with her attorney during the October 22 hearing.

CONCLUSION

We affirm the juvenile court's dismissal of the dependency actions. T.R.-S. received due process, and the trial court did not abuse its discretion in denying a continuance of the motion to dismiss.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____    _____
Lawrence-Berrey, J.                  Pennell, C.J.

19