# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STEFANIE HARRIS, individually and as )
Personal Representative of the Estate of)　No. 75246-4-I
STEVEN R. HARRIS (deceased);　　　 )
MARGARET HARRIS; and BRADLEY　 )　DIVISION ONE
J. MOORE, in his capacity as Personal　)
Representative of the ESTATE OF　　 )
TAYLOR GRIFFITH,　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　　　Respondents,　　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　v.　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
KENNETH GRIFFITH and JACKIE　　 )　PUBLISHED OPINION
GRIFFITH; MICHAEL B. KING, and the )
law firm of CARNEY BADLEY　　　　 )　FILED: March 5, 2018
SPELLMAN, P.S.; and JACQUELYN A. )
BEATTY, and the law firm of KARR　　 )
TUTTLE CAMPBELL,　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　　　Appellants.　　　　　　 )
_____)

BECKER, J. — An insurance defense lawyer who files a notice of appearance on behalf of an estate may not, after withdrawing from representation of the estate, later act on behalf of another client to remove the personal representative of the estate. The personal representative is a former client, and the lawyer must comply with Rule of Professional Conduct (RPC) 1.9, either by withdrawing from representation of the other client or obtaining consent

from the estate's personal representative. A lawyer who does not comply is properly disqualified for having a conflict of interest.

## FACTS

Sixteen-year-old Taylor Griffith was driving a pickup truck on State Route 202 on August 24, 2014. The truck crossed the center line and collided head-on with a car driven by Steven Harris. Both drivers were killed in the crash. Steven's wife, Margaret Harris, a passenger in his car, was seriously injured. Taylor was survived by his parents, Kenneth and Jackie Griffith. The Griffiths were insured by Travelers Home and Marine Insurance Company.

Margaret and her daughter, Stefanie Harris, as personal representative of the estate of Steven Harris, filed suit against Taylor's estate and his parents in December 2014. The complaint alleged that Taylor's estate and his parents were jointly and severally liable for the accident. The complaint further alleged that filing of the lawsuit was necessary because Travelers was not handling the claim in good faith, as evidenced by its failure to disclose the limits of the insurance carried by the Griffiths when requested by the plaintiffs to do so.

Attorney Michael Jaeger filed a notice of appearance on behalf of all defendants at the request of Travelers. In February 2015, Jaeger filed an answer. Trial was scheduled for January 4, 2016.

A personal representative had not been appointed for Taylor's estate. When a person dies intestate, as Taylor did, the next of kin have priority to be appointed to administer the estate so long as they petition within 40 days of the death.

2

RCW 11.28.120(2), (7). Otherwise, a court may appoint "any suitable person" as personal representative. RCW 11.28.120(7).

The Harris estate filed a petition in probate in November 2015, requesting appointment of Brad Moore as personal representative for Taylor's estate. The petition noted that the wrongful death complaint alleged liability not only on the part of Taylor's estate but also on the part of his parents, under the family car doctrine and other legal principles. The petition also mentioned the complaint's allegation that Travelers had acted in bad faith. The petition nominated Moore, an attorney experienced in matters of personal injury, as a suitable person to evaluate the assets and claims of Taylor's estate.

The Griffith parents, through Jaeger acting as attorney for "defendants," requested that Kenneth Griffith be appointed instead of Moore. The Griffith parents were the sole beneficiaries of their son's estate, which consisted only of his personal possessions and about $1,000. The parents denied having personal liability for Taylor's accident. They asserted that the references to Travelers in the petition were irrelevant to deciding who should be appointed as personal representative because Travelers was not a party to the suit.

At the hearing on the petition, the Harris estate argued that Moore was the more suitable personal representative because of his experience and understanding of the complexities of wrongful death litigation in a case where the estate's only real asset was its potential bad faith claim against its insurance company. The Griffiths objected to Moore, who is known as a plaintiff's attorney.

"I just feel like it's not independent enough . . . if you're considering appointing Brad."

The court commissioner ruled that given the potential for conflict between the Griffith parents and their son's estate, it was more untenable to appoint one of the parents than to appoint Moore. The commissioner expressed confidence that Moore would recognize his obligation as a fiduciary to be independent and impartial. The commissioner appointed Moore as personal representative by order dated December 8, 2015. The order specifically authorized Moore "to participate in litigation and to settle or assign claims" on behalf of Taylor's estate.

Jaeger did not initially acknowledge Moore as a client. Jaeger's first communication to Moore—on December 9, 2015—said he was planning to file a motion for revision of the order appointing Moore so that Kenneth Griffith could serve as personal representative. Moore responded, objecting that Jaeger had not consulted him about that. "I hope you do not take any actions against my interests. As it is, you haven't filed a Notice of Appearance on my behalf and I don't understand why. If you don't believe you represent me, then who do you claim to represent?" Moore asked Jaeger to provide his analysis of the estate's potential exposure in the wrongful death litigation and his strategy to defend the estate.

On December 15, 2015, Jaeger's firm filed the motion to revise, asserting that Moore was not suitable as the personal representative of the estate because he is a "plaintiff's personal injury practitioner."

On December 16, 2015, Jaeger filed an amended notice of appearance, stating he was counsel for the Griffith parents and counsel for Moore as the personal representative of Taylor's estate. On December 22, 2015, Jaeger told Moore that his goal was to protect the interests of the estate and the Griffith parents. He asked Moore to reconsider his refusal to step down as personal representative. He refused Moore's request for strategic advice: "We will not produce any sensitive case information given the pending motion for revision."

Around this time, Travelers appointed attorneys Jacquelyn Beatty and Michael King to serve as additional defense counsel. Beatty filed a notice in the wrongful death action associating herself with Jaeger on behalf of the Griffith parents and Taylor's estate. King filed a notice associating with Jaeger as counsel "for defendants."

On December 18, 2015, the court granted a motion by the plaintiffs for partial summary judgment. The order established that liability and causation were proven as to Taylor's estate, but not as to his parents. The order dismissed affirmative defenses pleaded by the Griffith parents and Taylor's estate.

On January 4, 2016, the first day of trial, Beatty introduced herself to the court as "personal counsel for the Griffiths." King was introduced as a lawyer "with the defense." The court heard argument on motions in limine and then concluded proceedings for the day after determining that a jury was not yet available.

The next day, January 5, 2016, the Harris plaintiffs moved to dismiss the Griffith parents without prejudice. Without objection, it was so ordered. This left

the amount of damages as the only remaining issue for the jury, with Taylor's estate as the only remaining defendant. At the request of plaintiffs, the court required each defense lawyer to identify his or her client in view of the dismissal of the Griffith parents. Jaeger, Beatty, and King all responded that they represented Taylor's estate:

> MR. JAEGER: I represent the estate, Your Honor.
> THE COURT: Okay.
> MS. BEATTY: Likewise.
>      Mr. King?
> MR. KING: I also represent the estate. I was retained to represent the estate of Taylor Griffith and the Griffiths for preservation of error matters and prospectively looking down the line for an appeal.
>      And since the Griffiths are no longer parties to the case, having been dismissed, now my responsibility is to the estate of Taylor Griffith.

The hearing continued with discussion of motions in limine, including a dispute about whether defense counsel could depose a doctor that evening. King argued that motion for the defense.

At the beginning of the afternoon session, the judge announced that she had been presented with a document signed by Moore and counsel for the plaintiffs by which they agreed to arbitrate any remaining issues between them. Over objection, the court signed an order for arbitration and concluded the trial.

Over the next few days, Beatty, King, and Jaeger filed notices withdrawing as counsel for Taylor's estate in the wrongful death action. The notices filed by Beatty and King stated that they continued as counsel for the Griffith parents. Beatty filed a notice of appearance on behalf of the Griffith parents in the probate action, in which the motion to revise the commissioner's order appointing Moore

6

was still pending. Represented by Beatty, the Griffith parents moved (1) for permission to participate as intervenors in the wrongful death action and (2) for a stay of the arbitration pending a ruling on whether Moore would be allowed to continue as personal representative. Over the plaintiffs' objection, the court granted both motions.

Represented by King, the Griffith parents filed a petition under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, to remove and replace Moore as personal representative. The court consolidated this petition with the pending motion to revise the commissioner's order appointing Moore. Both were set for consideration on April 29, 2016.

By motions filed on March 31, 2016, the Harrises alleged that under RPC 1.9, Beatty and King could not continue to represent the Griffith parents. Beatty and King responded that the rule did not apply because Moore was not their former client.

The court ruled that Moore was a former client of Beatty and King and that disqualification was warranted because of the conflict of interest. The court entered an order prohibiting Beatty and King from appearing on behalf of the Griffith parents in the wrongful death, probate, and TEDRA actions.[1] The disqualification order entered on April 27, 2016, is the subject of this appeal brought by King, Beatty, and the Griffith parents.

---

[1] A hearing on the TEDRA petition to remove Moore was held in May 2016. The Griffith parents were represented by new counsel. The court denied the petition. That order is the subject of a separate appeal before this court, In re Estate of Taylor Griffith, No. 75440-8-I.

7

## ANALYSIS

A preliminary issue raised by respondents is whether the appellants have standing. Only an aggrieved party may seek appellate review. RAP 3.1. An aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected. In re Guardianship of Lasky, 54 Wn. App. 841, 848-50, 776 P.2d 695 (1989). The court held in Lasky that an attorney removed as guardian of an incompetent adult had no standing to appeal the order removing him. Lasky does not control the standing issue here because the disqualification order was based on a determination that Beatty and King failed to comply with a rule of professional conduct. A court's formal finding of a lawyer's rule violation carries with it sufficient potential for adverse consequences to the lawyer to make the ruling appealable by the lawyer. United States v. Talao, 222 F.3d 1133, 1138 (9th Cir. 2000). Accordingly, we conclude Beatty and King have standing to appeal the disqualification order. Whether the Griffith parents also have standing need not be decided.

Whether an attorney's conduct violates a relevant rule of professional conduct is a question of law. Eriks v. Denver, 118 Wn.2d 451, 457-58, 824 P.2d 1207 (1992). The relevant rule in this case is RPC 1.9(a). The rule prohibits lawyers from "switching sides" and representing a party adverse to a former client in the same or a substantially related matter. Teja v. Saran, 68 Wn. App. 793, 799, 846 P.2d 1375, review denied, 122 Wn.2d 1008 (1993). RPC 1.9(a) is based on the attorney's duty of loyalty to a client. Teja, 68 Wn. App. at 798-99. It provides as follows:

> A lawyer who has formerly represented a client in a matter
> shall not thereafter represent another person in the same or a

8

substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

RPC 1.9(a).

The sole issue in dispute is whether Moore is a former client of Beatty and King. The trial court correctly determined that he is, in the order quoted below:

Moore is the client. Beatty and King represented Moore during the time they were counsel of record for the Estate. They entered notices of appearance for the Estate, and affirmed in open court, in answer to this judge's question, that they were, indeed, representing the Estate.

Having represented the Estate, and thus Moore, the former client, Beatty and King could not then represent the Griffiths in the "substantially related" probate matter because the Griffiths' interests were "materially adverse" to those of Moore, who did not give his consent. In the probate matter, Beatty and King, on behalf of the Griffiths, are suing Moore, their former client. These clients' interests could not get any more adverse. . . .

The Griffiths assert various arguments: no confidences were disclosed, Beatty and King never appeared on behalf of Moore, Moore did not regard them as his attorneys, no conflict existed between the Griffiths and the Estate, Moore and the Harris creditors never actually sought disqualification, their motives are tactical, and they waited too long.

All of the above is beside the point. Brad Moore is the PR [personal representative] unless and until this Court removes him.

The appellants argue that the "estate" was their client but Moore was not. This argument is untenable. In probate, the attorney-client relationship exists between the attorney and the personal representative of the estate. Trask v. Butler, 123 Wn.2d 835, 840, 872 P.2d 1080 (1994). "There is no agency or individual other than the official 'personality' of the administrator or executor which can be pointed to as the 'estate.'" In re Estate of Peterson, 12 Wn.2d 686, 730, 123 P.2d 733 (1942). Once Moore was duly appointed as the personal representative of Taylor's estate, he was the client of Jaeger. Moore then also

9

became the client of Beatty and King when they associated with Jaeger as attorneys for the estate. When Beatty and King withdrew from representing the estate, Moore became their former client.

Beatty and King argue that Moore cannot be their former client because he never had a subjective, reasonable belief that they were his attorneys. They cite Bohn v. Cody, 119 Wn.2d 357, 832 P.2d 71 (1992). In Bohn, parents loaned money to their daughter. When the loan was not repaid, the parents sued the daughter's attorney on several theories, including that he gave them negligent advice about the transaction. The parents held a subjective belief that the attorney formed an attorney-client relationship with them when he discussed the transaction with them, answered questions about it, and prepared a document formalizing the transaction. Bohn, 119 Wn.2d at 363-64. But the attorney told the parents he was not their lawyer, and the parents were unable to show that his actions were inconsistent with that statement. For this reason, the court held the attorney did not represent the parents. The client's subjective belief "does not control the issue unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions." Bohn, 119 Wn.2d at 363.

As evidence that Moore did not believe he was their client, Beatty and King quote from an e-mail sent by Moore to Beatty on the second day of the trial: "Let's be clear: I am the P.R. of the Griffith Estate. You do not represent me or the Estate (in spite of your prior representations to the Court to the contrary). . . . You are not authorized to make any representations on the Estate's behalf. As

you told me yesterday at the courthouse, you represent Mr. and Mrs. Griffith." Moore's peremptory tone is not surprising in view of the continuing effort by the Griffith parents to have Moore removed from administration of their son's estate. Considering the record as a whole, Moore's statement that "you do not represent me" falls short of demonstrating a subjective belief that the lawyers who had appeared for the estate owed him no duty of loyalty. It is more reasonably understood as an expression of Moore's frustration that the attorneys retained by Travelers to represent Taylor's estate were not communicating with him and were taking action on behalf of the estate without consulting him.

In addition, the circumstances did not make it reasonable to doubt that Beatty and King were in an attorney-client relationship with Moore. The issue of Moore's status as their client is controlled by the fact that Beatty and King entered formal notices of appearance in the wrongful death litigation on behalf of the estate.

As soon as Beatty and King filed their notices of appearance, they owed their client the duties discussed in Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 388-89, 715 P.2d 1133 (1986). "Both retained counsel and the insurer must understand that only the *insured* is the client." Tank, 105 Wn.2d at 388. Their client was Moore, the estate's personal representative. Beatty and King acted for the estate when they continued to participate in the wrongful death trial after the Griffith parents were dismissed. In answer to the court's question, they affirmed that they were still involved in the lawsuit as attorneys for the estate. Yet at the same time, they were advocating on behalf of their other

clients, the Griffith parents, to remove Moore as personal representative of their son's estate.

An advisory opinion issued by the Washington State Bar Association addresses the precise situation Beatty and King found themselves in—a potential violation of RPC 1.9 by a lawyer retained by an insurance company:

> The Committee reviewed your inquiry wherein you had been retained by an insurer to represent a city and a police officer employed by the city. You filed a Notice of Appearance on behalf of each of those clients. Subsequently, you learned that there was a conflict of interest between the two clients. You ask whether you can continue to represent the city after proper withdrawal from representing the police officer. *The Committee was of the opinion that for the purposes of RPC 1.9, the fact that you filed a Notice of Appearance means that the police officer is a former client and you must therefore comply with the requirements of RPC 1.9.*

WSBA Rules of Prof'l Conduct Comm., Advisory Op. 1578 (1994) (emphasis added).

We agree with the advice of the Bar. A lawyer appointed by an insurance company to defend two clients, and who files a notice of appearance on behalf of each of them, may not continue to represent only one of those clients without satisfying the requirements of RPC 1.9. Beatty and King could not continue to represent only the Griffith parents without Moore's waiver of the conflict. Because Beatty and King did not comply with the rule, the order disqualifying them was properly entered.

No. 75246-4-I/13

Affirmed.

WE CONCUR:

_Becker, J._

_Dwyer, J._    _Schindler, J._

13