IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

<table>
<tr><td>In the Matter of the Estate of<br>TAYLOR GRIFFITH,<br><br>             Deceased.<br><br>KENNETH GRIFFITH and JACKIE<br>GRIFFITH,<br><br>             Appellants,<br><br>       v.<br><br>BRADLEY J. MOORE, in his capacity<br>as personal representative,<br><br>             Respondent.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>No. 75440-8-I<br>(consolidated with No. 75840-3-I)<br><br><br><br><br><br>UNPUBLISHED OPINION<br><br><br><br><br><br>FILED: July 30, 2018</td></tr>
</table>

SCHINDLER, J. — Kenneth and Jackie Griffith filed a petition under the

Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, to

cancel letters of administration and remove and replace the personal

representative of the estate of their son Taylor Griffith. We affirm the order

denying the TEDRA petition but reverse the award of attorney fees and the

judgment against Kenneth and Jackie Griffith.

FACTS

Wrongful Death and Damages Lawsuit

On December 10, 2014, Stefanie Harris as the personal representative of the estate of Steven Harris and her mother Margaret Harris (collectively, Harris) filed a complaint against the estate of Taylor Griffith (the Estate) and his parents Kenneth and Jackie Griffith for wrongful death and damages. The complaint alleged that on August 24, 2014, 16-year-old Taylor was driving a Dodge Dakota pickup truck at a high rate of speed when he crossed the center line and hit a Ford Explorer head on.[1] The driver of the Ford Explorer, Steven Harris, and Taylor died. Steven's spouse Margaret was seriously injured.

The complaint alleged that the defendants were jointly and severally liable for all injuries and damages and that the "fatal and severe injuries and damages claimed by Plaintiffs were the direct and proximate result of the conduct of the defendants and their negligence, recklessness and/or fault." The complaint alleged Kenneth Griffith was the registered owner of the pickup truck, the truck was a family car, and Taylor was "a permissive and entrusted user" of the truck.

The complaint also alleged breach of contract and bad faith claims against the insurance carrier Travelers Home and Marine Insurance Company (Travelers). The complaint alleged Travelers violated insurance regulations and the deliberate failure to respond and disclose liability insurance limits "precluded plaintiffs from timely pursuing their own underinsurance benefits, cut off negotiations," and foreclosed a settlement within policy limits.

---

[1] We refer to some of the parties by their first names for purposes of clarity and mean no disrespect by doing so.

Travelers' insurance attorney Michael Jaeger filed a notice of appearance on behalf of the Estate and Kenneth and Jackie Griffith. The February 23, 2015 answer to the complaint asserts a number of affirmative defenses, including that Taylor Griffith "may have been confronted with a sudden emergency," contributory or comparative fault of the plaintiffs or other entities, and failure to mitigate damages. The answer states, "Pursuant to RCW 4.22.070, the defendants request the trier of fact apportion the fault of all persons, parties, or entities involved herein, with the resultant reduction in defendant's alleged liability."

The court scheduled trial for January 4, 2016. The case scheduling order required the parties to engage in dispute resolution before trial.

Petition to Appoint Personal Representative

Taylor died intestate. His parents are the sole beneficiaries of the Estate. The Griffiths did not file a probate action. If a probate action had been filed within 40 days of death, the statute gives the parents priority to be appointed to administer the Estate. RCW 11.28.120(7), (2)(b).

Approximately six weeks before trial on November 19, 2015, Harris filed a probate action and petition to appoint a personal representative. In re Estate of Taylor Griffith, King County Superior Court No. 15-4-06640-1 SEA.

The petition describes the need to appoint a personal representative for the estate of Taylor Griffith. The petition asserts the parents "have personal liability for the actions of their son under the family car doctrine and other legal

principles" and the Estate is liable for the collision caused by Taylor.

> According to the WSP[2] investigation, Taylor Griffith was the sole cause of the collision. He was living with his parents, returning from assisting his father's business, and was the permissive driver and sole occupant of his parents' Dodge Dakota pickup truck when he crossed the centerline on SR[3] 202 and struck the Harris' vehicle head on in their lane of travel. He also hit another vehicle that was following the Harris SUV[4].

The petition alleges Travelers "refused to disclose the liability insurance policy limits and otherwise negotiate in good faith, forcing the Harris Estate and family to file and pursue a lawsuit." The petition requests the court appoint attorney Brad Moore or "some suitable person" as personal representative of the Estate. Moore is an experienced personal injury and insurance attorney.

The Travelers insurance attorney filed a response on behalf of the Griffiths and the Estate. The Estate and the Griffiths agreed a personal representative must be appointed for the Estate "to allow the Lawsuit to proceed against Decedent, and/or for there to be a person with legal authority on behalf of Decedent." The Griffiths and the Estate requested the court appoint Taylor's father Kenneth Griffith as the personal representative. The response states the parents deny liability for the accident and the allegations against Travelers are not relevant to appointment of a personal representative.

Appointment of Personal Representative

The attorney representing Harris in the wrongful death lawsuit, David Beninger, and probate attorney Carolann Storli represented Harris at the December 8 hearing on the petition to appoint a personal representative.

---

[2] Washington State Patrol.
[3] State Route.
[4] Sport-utility vehicle.

Harris argued the complaint alleged claims against the parents and joint and several liability and bad faith claims against Travelers. Harris argued Moore had the experience and background necessary to act as the personal representative because of the "specialized nature" of wrongful death claims and bad faith claims against an insurance company.

The attorney representing the Griffiths and the Estate conceded Moore is "qualified to be a Personal Representative" but objected to Moore on the grounds that Moore and Beninger worked on a case together a "long time ago." The attorney stated, "I can see a bit of a conflict of interest there . . . . Just don't have a good feeling about it. . . . Not that there is any bad intention. I just feel like it's not independent enough if you're considering" appointing Moore. Beninger told the court he was not "aware of any time [Moore]'s ever worked on a case where we've worked on a case."

The superior court commissioner appointed Moore as the personal representative of the Estate.

> I will appoint Mr. Moore. I think that the potential for conflict or potential for just confusion, if nothing else, if I appointed one of the parents. It just — it — that feels more untenable to me than appointing an individual who is well-known in his field, and has unique qualifications to serve in this particular case.

The order issuing letters of administration and appointing Moore expressly states the "Personal Representative is authorized to participate in litigation and to settle or assign claims on behalf of Decedent's estate." Moore filed an oath to comply with the duties of the personal representative of the Estate:

> I am qualified under RCW 11.36.010 to serve as a Personal Representative . . . .

5

. . . .

. . . I will perform the duties of Personal Representative according to the law of the State of Washington.

. . . I understand that the basic duties of a Personal Representative are described in RCW 11.48.010, as follows:

**RCW 11.48.010 General powers and duties.**

"It shall be the duty of every personal representative to settle the estate, including the administration of any nonprobate assets within control of the personal representative under RCW 11.18.200, in his or her hands as rapidly and as quickly as possible, without sacrifice to the probate or nonprobate estate. The personal representative shall collect all debts due the deceased and pay all debts as hereinafter provided. The personal representative shall be authorized in his or her own name to maintain and prosecute such actions as pertain to the management and settlement of the estate, and may institute suit to collect any debts due the estate or to recover any property, real or personal, or for trespass of any kind or character."

On December 15, the Travelers' insurance attorney filed a motion on behalf of the Griffiths in the probate action to revise the commissioner's order appointing Moore as personal representative of the Estate. The parents argued Kenneth Griffith had statutory priority to act as the personal representative. The Griffiths asserted that Moore was not suitable because of "the appearance of conflict" between his duties to the Estate and "his prior relationship and affiliation with Plaintiff's Counsel."

On December 17, Jacquelyn Beatty filed a notice of association of counsel with the Travelers attorneys representing the Estate and defendants Kenneth and Jackie Griffith.

Partial Summary Judgment

On November 20, 2015, Harris filed a motion for partial summary judgment on liability, undisputed medical expenses and lost wages, and dismissal of the affirmative defenses. Harris submitted the WSP investigation of the collision. The WSP concluded there was no evidence that vehicle or roadway defects, weather, visibility, or road conditions contributed to the collision. The WSP report states there were no marks on the road to suggest Taylor crossed the center line to avoid an obstacle. The WSP concluded Taylor was the sole cause of the collision and there was no evidence that Taylor encountered either a mechanical defect, a sudden emergency, or an unavoidable accident. The WSP report states there was no evidence that Steven Harris contributed to the cause of the collision.

The court ruled on the plaintiffs' motion for partial summary judgment approximately two weeks before trial. The court ruled Taylor was liable for the collision. The court ruled Harris established the amount of medical expenses and lost wages. The court found the total amount of the past medical bills and lost wages for Margaret was $314,491.63. The court ruled Harris was entitled to dismissal of the affirmative defenses asserted by the Estate and the parents. But the court denied summary judgment on liability of the parents. On December 18, the court entered "Order on Motion Establishing Liability and Damages."

Notice of Creditors

Moore published notice to creditors of the Estate beginning on December 29, 2015.

Trial

Trial began on January 4, 2016. Attorney Michael King filed a "Notice of Association of Co-Counsel for Defendants" in the wrongful death lawsuit.

The court addressed the motions filed by Harris and the personal representative of the Estate to reconsider denial of summary judgment on liability of the parents. The court denied reconsideration. The court ruled Harris did not "sufficiently" raise the argument in the motion for partial summary judgment.

On the second day of trial, Harris filed a CR 41 motion to voluntarily dismiss the Griffiths without prejudice, change the caption of the case, and preclude making any reference to the jury that the parents had been parties to the lawsuit. Without objection, the court granted the motion and entered an order dismissing the Griffiths without prejudice.

The court and the remaining parties, Harris and the Estate, addressed motions in limine and outstanding discovery.

After the noon recess, Harris and the personal representative of the Estate presented an agreement for arbitration with former Washington Supreme Court Justice Faith Ireland on the amount of general damages. Moore informed the court:

> I'm the personal representative. I'm the client. I chose to arbitrate because I wanted to reduce the risk to the estate and also potentially maximize assets including potentially a bad faith case against Travelers. . . . Mr. Jaeger has a conflict. There is a potential claim that the estate may bring, could bring, and probably will bring against Mr. and Mrs. Griffith.

The attorney representing the Estate and the Griffiths objected to the agreement

to arbitrate. The attorney asserted, "I represent the estate of Taylor Griffith and the beneficiaries Ken and Jackie Griffith."

The court entered an order to arbitrate subject to a decision on the pending motion to revise the commissioner decision to appoint Moore as the personal representative of the Estate.

The Griffiths filed a motion to stay the arbitration and to intervene. The Griffiths noted the pending motion to revise and their objection to Moore serving as the personal representative of the Estate. The court granted the motion to intervene. The court stayed the arbitration pending the hearing on the motion to revise.

TEDRA Petition

On January 27, attorneys Beatty and King filed a petition on behalf of the Griffiths under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, to cancel letters of administration and to remove and replace Moore as personal representative of the Estate. The Griffiths argued Moore breached the fiduciary duty he owed to the Estate and the beneficiaries by (1) disregarding "the legal requirements for creditor's claims against an estate," (2) entering into an agreement to arbitrate and assign bad faith claims to Harris, and (3) threatening to sue the Griffiths on "bogus claims" of "indemnity." The Griffiths asserted Moore had an actual or potential conflict of interest that warranted removal because of his relationship with plaintiffs' attorney and the terms of the compensation agreement. In the alternative, the Griffiths argued the court should

allow discovery "to obtain additional evidence." The court entered an order consolidating the TEDRA petition with the pending motion to revise.

On January 29, Harris filed a creditors' claim against the Estate. The claim states the WSP determined Taylor was at fault for the collision, the court found Taylor liable for the collision and resulting damages, and the court dismissed all affirmative defenses. The stated value of the claim is between $8 million and $24 million. On February 11, 2016, Moore rejected the claims.

Harris and the personal representative filed briefs and declarations in opposition to the TEDRA petition, including the declaration of Harris' attorney Beninger, the personal representative, and expert witness Leland Ripley.

Harris denied there was a conflict of interest. The attorney asserts the personal representative complied with the claim filing requirements and the personal representative did not assign any claims to the plaintiffs.

The personal representative denied there was a conflict of interest and asserts the Estate has potential claims against the insurance carrier Travelers and against the Griffiths. The personal representative states he would be compensated from the assets of the Estate.

Ripley states he is an expert on "legal ethics, lawyer discipline, [and] legal malpractice" retained to "offer opinions on the conflicts of interest of insurance-defense counsel" and "the standards of care and fiduciary duties of Brad Moore, the court appointed Personal Representative of the Estate of Taylor Griffith." Ripley notes the order appointing Moore as the personal representative of the Estate authorizes Moore to " 'participate in litigation and to settle or assign claims

on behalf of Decedent's estate.' " Ripley states that in his opinion, there is no conflict of interest and the personal representative acted reasonably and within the standard of care.

Ripley states that with policy limits of $100,000, "even before trial, the estate's potential liability exceeds the available policy limits." And after the court entered the order establishing liability and damages, "the Estate faces the possibility of a large excessive judgment." In Ripley's opinion, the decision of the personal representative of the Estate to arbitrate was "a proper exercise of his fiduciary duty."

> On January 5, 2016, the plaintiffs non suited without prejudice Kenneth and Jackie Griffin [sic]. This was when the trial for the plaintiffs' damages was to begin . . . . After consulting with John Strait, a well respected professor of ethics at Seattle University, Mr. Moore agreed with the plaintiffs that he would accept arbitration to resolve the damages issues against the Estate. On January 6, 2016, the court entered an order to arbitrate without delay all the issues remaining between the Taylor Griffith Estate and the plaintiffs. Former Washington Supreme Court Justice Faith Ireland was named as the arbitrator.
>
> . . . Retired Justice Faith Ireland is also a former King County Superior Court judge. She is a very experiences [sic] and highly regarded jurist. The decision to arbitrate and her selection as an arbitrator are very reasonable and completely appropriate.
>
> . . . .
>
> . . . [T]he remaining issues that the Estate must resolve are solely the amount of damages that the plaintiffs are entitled to recover.
>
> . . . In this case, binding arbitration provides reasonable certainty regarding the amount of damages and a conservative range of possible damages. It avoids any chance of a "runaway" jury verdict. Thus, arbitration is a reasonable and prudent choice to control the amount plaintiffs can receive as damages against the Estate.
>
> . . . Mr. Moore's decision to agree to binding arbitration was a proper exercise of his fiduciary duty as personal

representative to both minimize the claims against the Estate and settle the Estate as quickly as possible. . . .

. . . .

. . . Given Mr. Moore's extensive experience as an attorney in complex personal injury and wrongful death matters, and complex insurance cases it is difficult to understand who could replace him and effectively deal with the issues and fiduciary duties involved in this case.

Disqualification Order

On March 31, Harris filed a motion under RPC 1.9 to disqualify Beatty and King from representing the Griffiths. On April 27, the court entered an order prohibiting Beatty and King from representing the Griffiths in the pending TEDRA petition and the probate action and the wrongful death action.[5] On May 2, a probate attorney entered a notice of appearance on behalf of the Griffiths in the probate proceeding and the TEDRA petition.

Order Denying Motion to Revise and TEDRA Petition

The court held a hearing on May 26 on the motion to revise the decision of the commissioner to appoint Moore as the personal representative of the Estate and the TEDRA petition to remove and replace Moore.

The court denied the motion for revision. The court ruled, "Based on the record before the commissioner, I don't see any reason at all to grant the motion for revision."

The court denied the TEDRA petition. The court concluded the Griffiths did not show "a breach of fiduciary duty or mismanagement or waste of assets." The court found, "The fact that Mr. Moore is also a plaintiff's lawyer, I don't find that to even be particularly relevant." The court concluded the evidence that

---

[5] In a separate appeal, we affirmed the April 27 order. In re Estate of Griffith, 2 Wn. App. 2d 638, 650, 413 P.3d 51 (2018).

12

Moore and the plaintiffs' attorney worked together "was about a very old case." The court concluded the Griffiths did not show that the decision to arbitrate was a breach of fiduciary duty. The court states the allegations of a potential bad faith claim against the insurance carrier presents "a good reason to have someone with his background rather than someone with just a straight estate's background handle the case." The court pointed out there was "no evidence" that Moore had assigned the potential bad faith claim to Harris. Because the court would review any request for compensation, the court concluded the Griffiths could file an objection when Moore submitted a request for fees. The court entered an order denying the petition to cancel letters of administration and replace Moore as the personal representative of the Estate and lifted the stay of arbitration.

Attorney Fees

Moore filed a motion for an award of attorney fees and costs under RCW 11.96A.150 for $28,380.62. The court found the amount reasonable and necessary.

> The attorneys' fees and costs Mr. Moore has incurred in opposing the Griffiths' Motion for Revision and the TEDRA Petition are reasonable and necessary. Mr. Moore is entitled to compensation for attorneys' fees and costs he incurred in prevailing against these motions pursuant to RCW 11.96A.150.

The court entered a judgment for attorney fees and costs in the amount of $31,910.62.[6] The Griffiths appeal the order denying the TEDRA petition and the order awarding Moore attorney fees.

---

[6] The court later confirmed the arbitration award and on September 29, 2016, entered judgment against the Estate of $12,130,192.63.

ANALYSIS

Standing To Challenge Personal Representative

Preliminarily, Harris and the personal representative contend the Griffiths do not have standing to challenge denial of the TEDRA petition.[7] We disagree.

Under TEDRA, "any party may have a judicial proceeding for the declaration of rights or legal relations with respect to any matter." RCW 11.96A.080(1). TEDRA defines a "party" as any member of a listed category "who has an interest in the subject of the particular proceeding." RCW 11.96A.030(5). The statutory categories include "heir" and "beneficiary." RCW 11.96A.030(5)(d), (e). The definition of "persons interested in the estate or trust" includes "all persons beneficially interested in the estate or trust." RCW 11.96A.030(6). RCW 11.96A.030(2)(c)(ii) defines "matter" to include a dispute "arising in the administration of an estate" that relates to "a change of personal representative." RCW 11.68.070 gives heirs, devisees, legatees, and creditors of an estate the right to file a petition to remove a personal representative. Here, Taylor Griffith died intestate, and his parents are the only heirs. See RCW 11.04.015(2)(b).

Denial of Petition To Remove and Replace the Personal Representative

The Griffiths contend (1) that Moore acted contrary to the fiduciary duty owed to the Estate and the beneficiaries and (2) that he had an actual or potential conflict of interest.

---

[7] The Griffiths assert Harris and Moore raise the standing argument for the first time on appeal. But in answer to the TEDRA petition, Harris asserts the Griffiths do not have standing.

We review the decision to deny the petition to remove Moore as the personal representative of the Estate for abuse of discretion. In re Estate of Beard, 60 Wn.2d 127, 132, 372 P.2d 530 (1962); In re Estates of Aaberg, 25 Wn. App. 336, 339, 607 P.2d 1227 (1980); In re Estate of Ardell, 96 Wn. App. 708, 718, 980 P.2d 771, review denied, 139 Wn.2d 1011, 994 P.2d 844 (1999). A trial court abuses its discretion if the decision is based on unreasonable or untenable grounds. In re Estate of Evans, 181 Wn. App. 436, 451, 326 P.3d 755 (2014).

The personal representative "stands in a fiduciary relationship to those beneficially interested in the estate." In re Estate of Larson, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985). The personal representative "is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs." Larson, 103 Wn.2d at 521. In performing his or her fiduciary duty, the personal representative must "utilize the skill, judgment, and diligence which would be employed by the ordinarily cautious and prudent person in the management of his own trust affairs." Hesthagen v. Harby, 78 Wn.2d 934, 942, 481 P.2d 438 (1971). A personal representative "must refrain from self-dealing, administer the estate solely in the interest of the beneficiaries, and uphold their duty of loyalty to the beneficiaries." In re Estate of Jones, 152 Wn.2d 1, 21, 93 P.3d 147 (2004).

The petition to remove the personal representative must be supported by an affidavit "which makes a prima facie showing of cause for removal." RCW 11.68.070. The record must support valid grounds to remove a personal representative. In re Estate of Lowe, 191 Wn. App. 216, 229, 361 P.3d 789

(2015). We uphold findings of fact if substantial evidence in the record supports the findings. In re Estates of Kessler, 95 Wn. App. 358, 369, 977 P.2d 591 (1999). "Substantial evidence is evidence that is sufficient to persuade a rational, fair-minded person of the truth of the finding." Jones, 152 Wn.2d at 8.

If the personal representative " 'is subject to removal for any reason specified in [RCW] 11.28.250,' " RCW 11.68.070 gives the court the discretion to remove the personal representative. Jones, 152 Wn.2d at 9 (quoting RCW 11.68.070).[8] RCW 11.28.250 specifically states:

> Whenever the court has reason to believe that any personal representative has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his or her charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such personal representative, or for any other cause or reason which to the court appears necessary, it shall have power and authority, after notice and hearing to revoke such letters. The manner of the notice and of the service of the same and of the time of hearing shall be wholly in the discretion of the court, and if the court for any such reasons revokes such letters the powers of such personal representative shall at once cease, and it

---

[8] RCW 11.68.070 states:

If any personal representative who has been granted nonintervention powers fails to execute his or her trust faithfully or is subject to removal for any reason specified in RCW 11.28.250 as now or hereafter amended, upon petition of any unpaid creditor of the estate who has filed a claim or any heir, devisee, legatee, or of any person on behalf of any incompetent heir, devisee, or legatee, such petition being supported by affidavit which makes a prima facie showing of cause for removal or restriction of powers, the court shall cite such personal representative to appear before it, and if, upon hearing of the petition it appears that said personal representative has not faithfully discharged said trust or is subject to removal for any reason specified in RCW 11.28.250 as now or hereafter amended, then, in the discretion of the court the powers of the personal representative may be restricted or the personal representative may be removed and a successor appointed. In the event the court shall restrict the powers of the personal representative in any manner, it shall endorse the words "Powers restricted" upon the original order of solvency together with the date of said endorsement, and in all such cases the cost of the citation, hearing, and reasonable attorney's fees may be awarded as the court determines.

shall be the duty of the court to immediately appoint some other personal representative, as in this title provided.

### 1. Breach of Fiduciary Duty

The Griffiths contend the court abused its discretion by denying their TEDRA petition because Moore breached his fiduciary duty. The Griffiths argue Moore breached his fiduciary duty by (1) not complying with the statutory claim filing requirements, (2) agreeing to arbitration, (3) threatening to sue them, and (4) considering the assignment of the potential bad faith claim to Harris.

Under RCW 11.40.010, "[a] person having a claim against the decedent may not maintain an action on the claim unless a personal representative has been appointed and the claimant has presented the claim as set forth in this chapter." A claimant must include a statement of the facts providing the basis for the claim and the amount of the claim. RCW 11.40.070(1)(c), (d).

The record shows Moore followed the statutory procedures on behalf of the Estate. The commissioner appointed Moore as the personal representative of the Estate on December 8, 2015. Beginning December 29, 2015, Moore published a notice to potential creditors of the Estate. Harris filed a claim against the Estate on January 29, 2016. Moore rejected the claim on February 11. Harris refiled the wrongful death lawsuit before the hearing on the TEDRA petition.

The Griffiths claim Moore breached his fiduciary duty by agreeing to arbitration. The personal representative of an estate has the duty to settle the estate "as rapidly and as quickly as possible, without sacrifice to the probate or nonprobate estate." RCW 11.48.010. The record and the expert testimony of

17

Ripley support the trial court's conclusion that Moore did not breach his fiduciary duty by agreeing to arbitrate.

The court ruled as a matter of law on the liability of Taylor for the head-on collision and death of Steven Harris and dismissed all of the affirmative defenses asserted by the Estate and the Griffiths. After the court granted the motion to dismiss the Griffiths without prejudice on the second day of trial, the Estate was the only remaining defendant, and the only remaining claim against the Estate was the amount of general damages. Ripley states:

> In summary, it is my opinion that Mr. Moore acted reasonably and within the standards of care as a fiduciary in this matter at all times, including his decision to arbitrate the remaining damage amounts owed the Harris claimants before retired former Washington Supreme Court Justice Faith Ireland.

The Griffiths argue Moore breached his fiduciary duty by considering the assignment of potential insurance bad faith claims to Harris. The Griffiths assert that if Moore believed the Estate has a bad faith claim against Travelers, Moore should have pursued the bad faith claim directly rather than assign the claim to Harris. But the court noted below that the record showed Moore had not yet pursued or assigned any potential bad faith claims to Harris. Further, Ripley states the decision to assign any bad faith claim is within the standard of care.

> It is also my opinion that [Moore] would be reasonable and well within the standards of care in this situation to assign the Estate's claims against the insurance company, the attorneys and the Griffith parents in exchange for protection from further suit or execution on the amounts of damages owed.

Next, the Griffiths contend Moore breached his fiduciary duty by threatening to sue them on "bogus claims for 'indemnity.' " As the personal

representative of the Estate, Moore had a fiduciary duty to prosecute potential claims against the Griffiths and the insurance company. RCW 11.48.010. The personal representative has authority to bring a lawsuit on behalf of the estate. RCW 11.48.010.

Harris sued the Estate and Kenneth and Jackie Griffith in the wrongful death action. Harris alleged the parents negligently entrusted Taylor with the truck and were liable under the family car doctrine. Harris alleged the Griffiths and the Estate were jointly and severally liable. Where multiple tortfeasors are responsible for the plaintiff's injuries and the plaintiff was not at fault, the tortfeasors against whom judgment is entered are jointly and severally liable for the sum of their proportionate shares of the plaintiff's damages. RCW 4.22.070(1)(b); Barton v. Dep't of Transp., 178 Wn.2d 193, 202, 308 P.3d 597 (2013). A jointly and severally liable defendant may seek contribution from another defendant against whom judgment has been entered. RCW 4.22.070(2); Barton, 178 Wn.2d at 203.

The expert testimony of Ripley establishes that Moore had a fiduciary duty to "pursue and maximize the Estate's most valuable assets," including claims against the Griffiths under the family car doctrine and bad faith claims against the insurance carrier.

> The Taylor Griffith Estate has limited assets. In addition to resolving the pending claims against the Estate, Mr. Moore has a fiduciary obligation to pursue and maximize the Estate's most valuable assets, its claims against the Griffith's [sic] under the Family Car Doctrine, against the insurer for bad faith, and against the defense attorneys for breaches of their fiduciary duties, and legal malpractice. Mr. Moore must

> fulfill his fiduciary obligations to pursue these assets and obtain a maximum recovery for these claims.
>
> . . .  The Taylor Griffith Estate has unliquidated assets to satisfy a damages judgment above policy limits. As personal representative Mr. Moore must recognize, and I am confident he does recognize, that the actions of the insurance company in this case resulting in suit and excess judgment creates the potential for a bad faith recovery against the insurer.
>
> . . .  Therefore, Mr. Moore must consider negotiating the plaintiffs' covenant not to execute against the Estate to recover any excess damages above the policy proceeds. The plaintiffs would agree to sign a covenant not to sue or execute against the Estate to collect the excess judgment in consideration of an assignment of the Estate's claims against Kenneth & Jackie Griffith under the Family Car Doctrine, the Estate[']s bad faith claims against the insurer, and the Estate's claims against the defense attorneys.
>
> . . .  Because he is the personal representative fiduciary, acting in the best interests of the Estate, Mr. Moore must have the authority to negotiate this option in order to protect the Estate and settle the Estate as quickly and as inexpensively as possible. . . .
>
> . . .  I am not aware of Mr. Moore agreeing to assign any of the Estate's claims, but it is reasonable and the standard of care for him to do so.

Citing Zellmer v. Zellmer, 164 Wn.2d 147, 188 P.3d 497 (2008), the Griffiths contend the parental immunity doctrine bars any claim against the Griffiths for contribution. First, the Griffiths did not assert parental immunity as an affirmative defense. The record also shows Moore did not assert a potential claim on behalf of the Estate against the Griffiths for negligent parenting. Moore stated the Estate had a potential claim against the Griffiths for contribution if judgment were entered against both the Griffiths and the Estate. Second, the parental immunity doctrine does not bar or limit the parents' liability to third parties. See Zellmer, 164 Wn.2d at 154-55.

For the first time on appeal, the Griffiths cite RCW 11.40.060 to argue Moore breached the fiduciary duty owed to the Estate and the beneficiaries by failing to seek a confession of judgment in the amount of the insurance policy limits. The Griffiths assert that when Harris filed a creditors' claim on January 29, 2016, the liability of the Estate was limited by statute to the liability limits of Taylor's insurance policy. We do not consider arguments raised for the first time on appeal. RAP 2.5(a); Heg v. Alldredge, 157 Wn.2d 154, 162, 137 P.3d 9 (2006); see In re Estate of Stover, 178 Wn. App. 550, 555 n.2, 315 P.3d 579 (2013) (The purpose of RAP 2.5(a) is " 'to give the trial court an opportunity to correct errors and avoid unnecessary retrials.' ") (quoting Postema v. Postema Enters., Inc., 118 Wn. App. 185, 193, 72 P.3d 1122 (2003)).

We conclude the court did not abuse its discretion and substantial evidence supports denying the TEDRA petition to remove Moore as the personal representative of the Estate for breach of fiduciary duty.

2. Conflict of Interest

The Griffiths argue (1) the longstanding professional relationship between Moore and Harris' attorney Beninger and (2) Moore's compensation as the personal representative of the Estate created a conflict of interest.

Where a personal representative has a conflict of interest that "would contravene the rights of the beneficiaries and result in waste of the estate," the personal representative should be disqualified. Jones, 152 Wn.2d at 19. "A conflict of interest arises in estate matters whenever the interest of the personal

representative is not harmonious with the interest of an heir." Trask v. Butler, 123 Wn.2d 835, 844, 872 P.2d 1080 (1994).

The Griffiths assert that at the hearing on the motion to appoint a personal representative, Beninger misrepresented his relationship to Moore, stating that he never worked with Moore on a case. Substantial evidence supports the trial court finding there was no conflict of interest between Moore and Beninger that required removal of Moore as personal representative of the Estate.

Beninger and Moore submitted declarations addressing the conflict of interest claim. Beninger states that at the hearing before the commissioner, he "did not recall any prior case and truthfully said so." Beninger said that Moore was not his co-counsel in the case that settled in April 1998 but instead, represented a separate client whose claims were partly adverse to his client. Beninger had no other recollection of associating with Moore on a case. Moore confirmed that he and Beninger have not served as co-counsel on the same case or shared fees in a case. Moore states the work he did on the cases in 1998 was minimal and there was no fee sharing. Moore described his relationship with Beninger as "professional competitors."

The Griffiths assert that Moore's reliance on potential bad faith claims for compensation as the personal representative of the Estate creates a conflict of interest. Moore testified that he "expect[s] to be compensated either by Travelers pursuant to the insurance policy, out of the proceeds of claims against Travelers should it not honor its obligations under the policy, or other revenues the Estate might receive."

22

Under RCW 11.48.210, the personal representative of an estate may be compensated for his or her services "as the court shall deem just and reasonable." Because the court will review any request for compensation, the court concluded the Griffiths could file an objection when Moore submitted a request.

The trial court did not abuse its discretion in concluding the relationship between Harris' attorney and the personal representative and compensation of the personal representative did not create a conflict of interest that required removal.

Attorney Fee Award

The Griffiths contend the court erred in entering an order and judgment against Kenneth and Jackie Griffith for attorney fees and costs under TEDRA. The Griffiths argue the motion for attorney fees and costs was not timely filed under CR 54(d)(2).

The application of a court rule to a particular set of facts is a question of law reviewed de novo. Kim v. Pham, 95 Wn. App. 439, 441, 975 P.2d 544 (1999). CR 54(d)(2) states that "[u]nless otherwise provided by statute or order of the court," a motion for attorney fees and costs "must be filed no later than 10 days after entry of judgment."

In opposition to the TEDRA petition filed by the Griffiths to remove and replace the personal representative, Moore argued the court should award the Estate and Moore attorney fees and costs under RCW 11.96A.150. Under

TEDRA, the trial court has discretion to award attorney fees:

> Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1).

On May 26, 2016, the court entered an order denying the TEDRA petition to remove and replace the personal representative. The order states, "Petition is denied for all the reasons the Court stated (which are incorporated herein)."

On August 2, 2016, Moore filed a motion for attorney fees and costs and entry of judgment against the Griffiths. Moore argued it was "appropriate, fair, and equitable" to award fees and costs against the Griffiths for "defending against the Motion for Revision and the TEDRA Petition." On August 10, the court entered an order granting Moore's motion for an award of attorney fees and costs and on August 25, entered a judgment in favor of Moore against the Griffiths for $31,910.62.

North Coast Electric Co. v. Signal Electric, Inc., 193 Wn. App. 566, 373 P.3d 296 (2016), does not support Moore's argument that the motion for attorney fees and costs was timely filed under CR 54(d)(2). In North Coast, electrical supplier North Coast Electric Co. filed a lawsuit to recover payment for equipment and materials for a public works project. N. Coast, 193 Wn. App. at

568. North Coast filed a motion for summary judgment on " 'its prima facie claim in the principal amount of $301,851.49' " and " 'costs and reasonable attorney's fees incurred in collecting the amount due in an amount to be determined in further proceedings.' " N. Coast, 193 Wn. App. at 569. In the memorandum in support of the motion for summary judgment, North Coast argued that it was entitled to attorney fees, stating, " 'North Coast's right to recover fees under RCW 39.08.010 and RCW 60.28.030 is indisputable and it will be the ultimate prevailing party even if [the defendant] prevails on its partial defense.' " N. Coast, 193 Wn. App. at 569.

In opposition, the defendant disputed the principal amount owed but "did not respond" to the assertion that North Coast was entitled to attorney fees. N. Coast, 193 Wn. App. at 570. After the court granted the motion for summary judgment and before entry of a judgment, North Coast filed a motion for an award of attorney fees and costs. N. Coast, 193 Wn. App. at 570. The court denied North Coast's motion as untimely under CR 54(d)(2). N. Coast, 193 Wn. App. at 570-71. On appeal, we reversed:

> [W]e hold that North Coast's inclusion of its request for attorney fees in its August 14 motion for summary judgment complied with the plain language of CR 54(d)(2) because it claimed attorney fees and expenses, was made by motion, and provided the facts and law necessary for a court to make a determination, and the motion was filed no later than 10 days after judgment was entered. CR 54(d)(2).

N. Coast, 193 Wn. App. at 573.

Here, an award of attorney fees and costs under TEDRA is discretionary. And unlike in North Coast where the request was included in a motion for

summary judgment, Moore's initial request for attorney fees and costs was not in a motion, it was in a pleading in opposition to the petition to remove and replace the personal representative. Further, the record shows that in denying the TEDRA petition, the court did not address the request for attorney fees. We conclude Moore's motion for an award of attorney fees and costs was not timely filed.[9]

We affirm denial of the TEDRA petition to remove and replace the personal representative of the Estate and reverse the award of attorney fees and the judgment against Kenneth and Jackie Griffith.[10]

WE CONCUR:

---

[9] Therefore, we need not address the argument that the record is inadequate for review. Nonetheless, we note that because the court did not enter findings of fact and conclusions of law supporting the award of attorney fees, the record is inadequate. Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632 (1998).

[10] We decline to award Moore attorney fees and costs on appeal.